## TRABER v. HICKS *et al.*, *Appellants*.

### Division One, November 26, 1895.

1. **Evidence**: WITNESS: MEMORANDA: REFRESHING MEMORY. While a witness may refresh his memory from written memoranda made by himself at or near the time of the transaction, he can not do so from those made by others; and as to facts of which he has no personal knowledge.

2. ———: ———: ———: ———. Where a writing is used by a witness for the purpose of refreshing his memory, the opposite party has the right to inspect it in order by cross-examination to test its sufficiency for the purpose for which it is used.

3. ———: DEPOSITIONS, OBJECTIONS TO. While objections to depositions which do not go to the competency or relevancy of the evidence should be settled before trial, hearsay evidence is not within the rule.

4. ———: LETTERS: SECONDARY EVIDENCE. Letter press copies are secondary evidence and are, as to their admissibility, governed by the rules applicable thereto.

5. Pleading: PETITION: DECEIT: CONTRACT. The petition in this case considered and *held* to state a cause of action for fraud and deceit, and not one for breach of contract.

6. Principal and Agent: NOTICE. While notice of a fact acquired by an agent when transacting the business of his principal will be imputed to the latter, yet such will not be the case when the agent acquires his knowledge while acting for himself and in his own interest.

7. ———: ———. Nor will a principal be chargeable with notice of a fraud perpetrated upon him by the agent's collusion with the other party to the transaction.

8. ———: VERDICT: DAMAGES. Where in an action for deceit the evidence as to the amount of the damages is conflicting, and there is substantial evidence to support the verdict, the supreme court will not disturb it on the ground that it is excessive.

*Appeal from Jackson Circuit Court.*—HON. E. L. SCARRITT, Judge.

REVERSED AND REMANDED.

*Kinley & Kinley* for appellants.

(1) The testimony of E. T. Rhodus as contained in his deposition showed that his evidence was delivered from written memoranda, furnished him by other parties, and also furnished by the plaintiff, which the witness refused to allow the attorneys for defendants to inspect, or to permit the memoranda to be inspected or copied by the notary or permit the memoranda or copies of same to be attached to his deposition. Neither law nor right justifies such a method of preparing evidence by parties interested and the penalty of rejecting the entire deposition should have been imposed upon plaintiff for using such methods. *Smith v. Griffith*, 3 Hill (N. Y.), 333; *Kissam v. Forest*, 25 Wendell, 651; *People v. Cole*, 43 N. Y. 512; *Hewlitt v. Woods*, 67 N.

Y. 394; *Chase v. Kenniston*, 76 Me. 209; *Nicholson v. Desobry*, 14 La. Ann. 81; *Shelton v. Paul*, 27 S. W. Rep. 172; *Coleman v. Colgate*, 69 Tex. 88. (2) The letter press copy of the letter from the defendants to Wm. S. Earl was improperly admitted: *First*, because no effort was made to either supply, procure, or account for the original letter; and, *second*, because the contents of such letter were irrelevant, immaterial, and in nowise tending to throw any light on the issues involved and were calculated to mislead the jury. *Foot v. Bentley*, 44 N. Y. 166; *Delaney v. Errickson*, 10 Neb. 492; *Ebon v. Zempleman*, 47 Tex. 503. The letter having been written after the alleged fraud was claimed to have been committed, was erroneously admitted. (3) A principal can not retain the benefits in a transaction, accruing to him by the misconduct of his agent and repudiate the remainder of the transaction. Reber, as plaintiff's agent, worked up a sale of plaintiff's ground to Rhodus, and in so doing had a complete understanding with Rhodus, Otis, and Evans as to how the first payment was to be made to plaintiff, as well as helping to thus arrange it between the said parties, by which this plaintiff got $4,000, which he ought not to retain and at the same time repudiate the acts of his agent, by which he secured to his principal the said $4,000. *Hickman v. Green*, 123 Mo. 165; *Bank v. Lovitt*, 114 Mo. 519; *Hedrick v. Beeler*, 110 Mo. 91; *Meier v. Blume*, 80 Mo. 180; *Hayward v. Ins. Co.*, 52 Mo. 181; *Slater v. Irwin*, 38 Iowa, 261; 1 Parsons, Cont. [6 Ed.] 75, 76; Story, Agency [Bennett's Ed.], sec. 140. (4) To maintain an action for damages arising from fraudulent misrepresentations, or, more accurately speaking, for fraud and deceit, the false representations upon which the action is based, or on which the party relied, must be of and concerning an existing thing in fact, or one represented to exist, and the action can not be sus-

tained on a promise to perform an act in the future. *Wade v. Ringo*, 122 Mo. 322; *Hotel v. Tiernan*, 8 Mo. App. 596; *Bullock v. Wooldridge*, 42 Mo. App. 356; *Terry v. Ins. Co.*, 3 Mo. App. 595; *Franklin v. Halle*, 7 Mo. App. 241; *Ordway v. Ins. Co.*, 35 Mo. App. 426; *Ex Parte Fisher*, 18 Wend. 608; *Gallagher v. Brunel*, 6 Cow. 351.

*L. H. Waters, L. C. Slavens* and *G. A. Vandeveer* for respondent.

(1) Plaintiff contends that the promise of Hicks & Foster was fraudulently made to him and that the contract between plaintiff and defendant was fraudulently procured by them, and that he has a right to pursue either remedy, and in exercising that right has brought his action for fraud and deceit, and in support of that right respectfully cites the court to the following authorities. Cooley on Torts [2 Ed.], pp. 175, 475, 484, 487; 1 Bigelow on Fraud, pp. 484, 487; Hilliard on Torts, 138; Moncrieff on Fraud and Misrepresentation (1891), 16, 17, 101–107, 172, 255, 352, 353. *Edgington v. Fitzmaurice*, 29 Ch. D. 459; *Wilson v. Eggleston*, 27 Mich. 257; *Loring v. McKee*, 13 Mich. 124; *Dowd v. Tucker*, 41 Conn. 197; *Richardson v. Adams*, 10 Yerg. 273; *Thynn v. Thynn*, 1 Vern. 296; *Douthet v. Applegate*, 33 Kan. 495. (2) The court did not err in allowing plaintiff to read the deposition of Rhodus. No motion was made to suppress it, nor were any objections made to its admission as a deposition. *Robinson v. Railroad*, 7 Allen, 393; *Sheriff v. Queens Co.*, 5 Sanf. (N. Y.), 219; *Feeter v. Heath*, 11 Wend. 477; *State v. Cheek*, 13 Ired. 114. (3) The instructions taken together state the law of the whole case correctly. *Barry v. Railroad*, 98 Mo. 62.

MACFARLANE, J.—This action is for damages on account of alleged fraud and deceit.   A trial resulted in a verdict and judgment for plaintiff and defendants appealed.

The petition charges in substance that plaintiff was the owner of a lot in Kansas City, one hundred by one hundred and fifty feet in extent; that prior to October 8, 1889, he had offered to sell the same to one Rhodus for the sum of $13,000, of which $4,000 was to be paid in cash; that Rhodus should have the right to borrow on each half, or fifty feet front, of the lot the sum of $11,000 and secure the same by first deeds of trust on the respective lots, and plaintiff should take a second deed of trust of $4,500 on each to secure the balance of the purchase price, and that the $11,000 to be borrowed on each lot should be applied to the erection of buildings thereon; that defendants being fully advised of this offer agreed with Rhodus to lend the money on the terms offered by plaintiff and agreed with plaintiff that they would, so far as possible, see that the money so to be loaned should be applied in the erection of the buildings according to the offer of plaintiff; that with these agreements plaintiff sold the lots to Rhodus who paid $4,000 cash, and executed and delivered to defendants first deeds of trust for $11,000 on each half of the lot and to plaintiff second deeds of trust for $4,500 each thereon; that prior to the consummation of this sale and the execution of these deeds said Rhodus and defendants entered into an agreement by which $3,000 of each deed of trust should be paid to Rhodus or his order on the completion of the foundation of said buildings, when the foundations would in fact cost less than $600 each; that Rhodus by an assignment of said contract as collateral obtained the money from one Otis with which to make plaintiff the cash payment of

$4,000 on said sale; that upon completion of the foundations of said buildings defendants, upon the order of said Rhodus, paid Otis the sum of $6,000, well knowing that the foundation did not cost to exceed the sum of $600.

Plaintiff charges that the agreement between Rhodus and defendants was made and carried out with the fraudulent intent and purpose of making the cash payment on the purchase of the lots out of the money borrowed from defendants and secured by a first deed of trust on the lots. Plaintiff further charges that Rhodus failed to complete said buildings and is himself wholly insolvent; that defendants, for value and before maturity, assigned their notes and first deeds of trust to an innocent purchaser; that the property had been sold under the power contained in the deeds of trust and by reason of all which plaintiff had been defrauded out of his property to his damage in the sum of $12,000.

The answer was a general denial. The evidence tended to prove the allegations of the petition. The instructions given for plaintiff, which were quite lengthy, authorized a recovery upon proof of the facts charged in the petition.

At the request of defendant the court instructed the jury that "there can be no recovery unless the jury find and believe from the evidence that Hicks and Foster on or about October 2, 1889, entered into a fraudulent conspiracy with Rhodus to enable Rhodus to apply $4,000 of the money borrowed by him of Hicks on the cash payment to be made by Rhodus to plaintiff instead of putting the same into the erection of the buildings."

The court also gave the following instruction asked by defendant: "The jury are instructed that if they find and believe from the evidence that Hicks and Foster paid the money provided for in the building

loan, except the defendants' commission, over to Rhodus in good faith, expecting and having reason to believe that Rhodus had expended it or intended to expend it in paying for labor and material for the buildings, or paid it out on bills or claims for material that had gone into the buildings, or was represented to Hicks and Foster to have gone into the buildings, and that Hicks and Foster honestly believed had gone into the buildings, then your verdict should be for the defendants."

I.   On the trial the deposition of Edward T. Rhodus was read in evidence by plaintiff.   It appears that this deposition was taken in Chicago.   During the cross-examination it was developed that witness on his direct examination had consulted certain written memoranda, which he said were prepared partly by himself and partly by someone else.   This memoranda the witness refused to allow counsel for defendant to inspect and refused to allow the notary to attach to the deposition.   For these reasons defendants objected to the reading of the direct examination of the witness.   This objection was first made when plaintiff offered to read the deposition upon the trial.   The objection was overruled and the ruling of the court in so doing is assigned as error.   Counsel now insist that the entire deposition should have been excluded.

There is no doubt that a witness should be required to testify from his own knowledge and not from information obtained from others.   He has the right to refresh his memory from written memoranda made at or near the time by himself, or which he knew, when made, to be correct; but he has no more right to testify from written notes or memoranda made by others of which he had no personal knowledge at the time than he would have to detail, as within his own knowledge, facts derived from mere information.

In case a writing is used by a witness for the purpose of refreshing his memory, the adverse party has the right to an inspection of it, in order, by cross-examination, to test its sufficiency for the purpose used. It appears that a part of the memoranda to which this witness referred was made by him within a month next before his examination, and a part was furnished him by plaintiff himself on the morning the deposition was taken. It also appears that the witness refused to permit counsel for defendant to examine them.

The deposition was taken some years after the transaction about which the witness testified, and the writings were clearly improper for the purpose for which they were used by the witness. Plaintiff insists, however, that the objection should have been raised by motion to suppress the deposition, or such parts of the testimony of the witness as were given in reliance on the objectionable memoranda, in order to give him an opportunity to retake the deposition.

The rule undoubtedly is that objections to depositions, that do not go to the competency or relevancy of the evidence, should be settled before the trial. R. S. 1889, sec. 4463; *Delventhal v. Jones*, 53 Mo. 460; *State ex rel. v. Dunn*, 60 Mo. 70; *Bell v. Jamison*, 102 Mo. 76.

The question here is, does the objection to this deposition go to the competency of the evidence? The evidence of the witness derived from written memoranda made by another, years after the transaction about which it is given, can be regarded in no other light than that of hearsay evidence. That hearsay evidence falls within the category of incompetent evidence, and, when a witness is testifying orally, may be objected to on the trial, can not be questioned. The character of the evidence is not altered when taken by way of deposition. It is still hearsay and incompetent.

The deposition is placed on file and the character of the evidence appears upon it.

Now, if it appeared that the entire evidence was hearsay the whole of it should certainly have been excluded, and the objection could properly have been made at the trial; or, if any specific part of the testimony was incompetent, such part could have been excluded.

From the deposition it appears that only a portion of the evidence given on direct examination was derived from the improper *memoranda*. But it would necessarily have been difficult, if not impossible, on cross-examination to have separated the competent from the incompetent evidence, unless, at least, an inspection of the memoranda had been permitted.

It appeared that plaintiff not only furnished a part of the memoranda himself, but in person conducted the examination of the witness. Moreover, he objected to an examination of the witness in respect to the papers he had consulted. It is, therefore, fair to conclude that plaintiff himself approved, if he did not instigate, the contumacy of the witness in refusing the opposite party an inspection of the memoranda. The conduct of plaintiff and his witness was, to say the least, reprehensible. The evidence as a whole, given in the circumstances shown, was not only affected by its hearsay character, but was tainted by the misconduct of plaintiff and the witness. It was not such evidence as should be used in the settlement of important rights in courts of justice.

The objection to reading the deposition went to its incompetency as evidence, as well as to its questionable character; it was no formal or technical objection that would be waived if not taken before the trial. The deposition, with all its objectionable features appearing upon its face, was offered as evidence. The objection

was made to it as evidence.    We think the objection in time, and that the court erred in not excluding the evidence.

II.    The court permitted a letter press copy of a letter written by defendants to one Earl to be read in evidence without notice, or other efforts, to produce the original.    This we think was error.    Copies of letters and written documents are secondary evidence, and can only be read after proper diligence has been used to secure the originals.    Letter press copies, while they have advantages over other copies in the matter of accuracy, are at last but copies, and are governed by the same rules in respect to their admissibility as are applied to copies made by other methods.

But defendants, by their declaration made by this letter, merely in substance inform Earl, who appears to have been an investor, that these notes and mortgages of Rhodus are desirable investments, and offer to dispose of them.    That defendants regarded the notes good and desirable investments does not seem to have been disputed by them.    The error, therefore, in admitting the copies could not have been prejudicial, and would not reverse the judgment.

III.    The substantial contention on the part of defendants as ground for reversal is that the case made by plaintiff, if any, was not for fraud and deceit but for a breach of the contract by which defendants undertook to see that the money to be loaned by them to Rhodus should be applied to the erection of the buildings on the lots sold by plaintiff to him.    To support this contention the general principle is invoked that an action for fraud and deceit can not be maintained upon the mere breach of a promise to perform an act in the future, but, "the deception must relate to facts then existing or which had previously existed, and which were material to the dealings between the parties in

which the deception was employed." Cooley on Torts, 555. This principle has well recognized exceptions which need not be noted.

The case, as made by plaintiff, and upon which the judgment was rendered, does not in our opinion rest upon a simple breach of the promise made by defendants to plaintiff. At the time this promise was made a state of facts existed which was known to defendants and was unknown to plaintiff and which very materially lessened the advantages the contract gave to plaintiff. An agreement then existed between Rhodus and defendants by which a pretended payment on the foundation of the buildings should be applied to making the cash payment to plaintiff of the purchase price of the lots, while defendant knew that plaintiff required an actual cash payment as a condition to a conveyance of the property. It was through this deception that plaintiff was induced to convey his lots and to rely upon the promise which defendants knew could not be performed. It is true that defendants promised to see that the money they loaned Rhodus should be applied to the construction of the buildings upon the lots. But, if at the time this promise was made defendants had so dealt with Rhodus as to put it beyond their power to perform it, and on the promise plaintiff was induced to convey his property and accept a second lien thereon to secure the unpaid purchase money, the transaction would certainly be a fraud upon plaintiff which would support an action for resulting damages. The deception related to existing facts which were concealed; namely, an outstanding agreement the very purpose of which was to defeat one of the controlling conditions upon which plaintiff offered to convey his lots. These facts were charged in the petition, were abundantly supported by the evidence, and, under the instructions, were required to be found

by the jury.   The case as made by the pleadings clearly
falls within the rule invoked by defendants.   The
deceit charged relates to facts then existing which are
material to the dealings of the parties in which the
deception was employed.   The judgment was author-
ized under the case made.

IV.   The evidence tended to prove that one Reber
was the agent of plaintiff in negotiating the sale of the
lots to Rhodus.   Through his negotiations an agree-
ment was reached which required a cash payment of
$4,000 on the lots.   This was one of the conditions
upon which plaintiff agreed to waive his vendor's lien
for the balance of the purchase price and accept a deed
of trust on the lots as security for the same, which
should be subject to the deed of trust for the money to
be loaned by defendants and applied in the erection of
the buildings.   This agreement was not at the time
executed, for the reason that Rhodus was not then able
to make the cash payment.

While this proposition was outstanding, Reber
was employed by Rhodus to negotiate a loan or loans
by means of which its conditions might be complied
with.   Through this agent it is claimed the scheme was
concocted by which the cash payment should be taken
out of the money to be loaned by defendants.   Reber
denied any knowledge of the methods by which the
money for the cash payment should be obtained, but
we assume that the evidence tended to prove that his
knowledge, under the facts and circumstances proved,
might be inferred.

The court refused an instruction asked by defend-
ants to the effect that if Reber was the agent of plaintiff
for the sale of the lots in question, and while negotiat-
ing with Rhodus for such sale he was informed of the
arrangement being made by Rhodus and Otis, by
which $4,000 was to be diverted from the loan to be

made by defendants to Rhodus for the purpose of paying said sum to plaintiff as the first payment on the lots, and knew it was finally done, then plaintiff would be bound by such information as his agent had acquired.

The general rule is well settled that notice of a fact acquired by an agent while transacting the business of his principal, will be imputed to the principal, but the reason of the rule ceases when the agent acquires his knowledge while acting for himself and in his own interest. *Bank v. Lovitt*, 114 Mo. 519.

Another exception to the general rule is that the principal will not be chargeable with notice of a fraud perpetrated upon him by the collusion of his agent with the other party to the transaction. *Hickman v. Green*, 123 Mo. 176.

Now, it is clearly established by the evidence that if Reber acquired knowledge of the intended fraud it was after his agency for plaintiff had ended and while he was acting as agent for Rhodus. It is further established by the undisputed evidence that Reber had no authority to bind plaintiff to the transaction, and defendants were fully advised of the extent of his authority. If, therefore, Reber was advised of the fraudulent scheme, he was necessarily in collusion with defendants and Rhodus in accomplishing it. In neither case can the knowledge of Reber be imputed to plaintiff. The instruction was, under the evidence, properly refused.

V. But it is said that while the petition charged fraud and deceit as the basis of the action, the instructions authorized a recovery upon a simple breach of the promise to apply the money loaned Rhodus in payment of the cost of the construction of the building.

The instruction is not justly open to the criticism applied to it. After requiring the jury to find all the

facts charged as fraud the first instruction concludes by requiring a further finding by the jury that the money loaned was not applied as required by the terms of the promise. It does not seem that plaintiff can fairly complain of this addition to the instruction. Indeed, it is most favorable to him. It declares in effect that though the fraudulent intent to divert a portion of the money from the purpose to which plaintiff intended, and defendants agreed, it should be applied, existed when the agreement was made, still, if defendants faithfully performed the contract, and applied the proceeds of the loan as agreed, then there could be no recovery. The principle announced by the instruction is that a fraudulent intent is only actionable when consummated and when it results in damage. Plaintiff's rights were not prejudiced by this declaration.

VI. Defendants complain that the damages awarded, which were estimated by the jury at $7,000, were excessive. But on the question of damages the evidence was conflicting. There was substantial evidence under which the amount of the verdict was justified. In such case the question was one for the jury and this court will not interfere with a verdict which has been approved by the trial court.

We have examined with care the instructions given and refused, and while many objections to the rulings of the court in respect thereto are made we find no prejudicial error.

For the error in admitting the deposition of Rhodus the judgment is reversed and the cause remanded for a retrial. All concur.