## THE STATE v. LENTZ, Appellant.

### Division Two, November 22, 1904.

1. **CONVERSION: Attorney: Assent: Instruction.** An instruction in a prosecution for conversion by an agent or employee of money belonging to his employer, is erroneous, if it omits the words "without the assent of his employer," since it fails to require the jury to find, from the testimony, an essential element of the offense defined by the statute (sec. 1912, R. S. 1899).

2. —————: —————: —————: **Covered By Other Instruction.** An instruction which undertakes to cover the whole case, yet omits an essential element even though it be a negative one, such as that the conversion was "without the assent of the employer" of the accused, is not cured by including that element in another instruction. The rule that an omission in one instruction of an element of the offense is cured by its inclusion in another, applies only when the instruction omitting the element is applicable only to some particular element of the offense..

3. —————: —————: **Intention To Restore.** An instruction that tells the jury that the accused may be guilty of conversion "notwithstanding he intended at some future time to restore the money," is not erroneous, but it should be made to apply to an intention formed subsequently to the commission of the offense. He could not at the time of committing the offense have intended both to convert the money to his own use and to restore it.

State v. Lentz.

4. ————: **Proof of Special Intent: The Rule.** If the statute does not, in creating the offense, couple with the commission of the act a specific intent, but simply makes the commission of the act a criminal offense, and the act is wrong within itself, proof of a specific intent is not necessary, but the intent may be inferred from the unlawful commission of the act.

5. ————: ————: **The Statute.** The statute makes the conversion or embezzlement by an agent of money or property of his employer, without his assent, a crime, and the intent of the accused in converting his employer's money to his own use, without his assent, may be inferred from proof of the unlawful conversion, and proof of his specific intent is not necessary. The words "with intent to embezzle or convert to his own use," found in the second subdivision of that statute, apply to the taking, secreting or making away with the employer's property or money, and do not apply to the act of conversion denounced by the first subdivision.

6. ————: **Instruction: Use of Word "Unlawful."** The use of the words "unlawful conversion," instead of felonious or fraudulent conversion, as a basis for the inference of criminal intent, is not erroneous, if the court in other instructions fully and fairly defines the character of conversion that would be deemed unlawful.

7. ————: **Evidence: Press Copies of Letters.** Letterpress copies of letters written by one attorney of the defrauded employer to the accused, in a prosecution for conversion, are admissible in evidence only after proper and unavailing efforts to secure the originals have been made. The mere fact that the State can not compel the production of the originals, will not avoid the necessity of making the necessary effort to secure them.

8. ————: **Attorney: Retention of Reasonable Fee: Instruction.** In a prosecution of an attorney for converting to his own use money he had collected for a client, the jury should not be permitted by the instructions to consider the reasonableness or unreasonableness of the amount retained by him for his legal services, nor should they consider any dispute between him and his employer as to the amount of his charge. If the amount retained for his services was unreasonable, yet if it was retained in good faith for such services, its retention was not embezzlement.

Appeal from Butler Circuit Court.—*Hon. Robert A. Anthony*, Special Judge.

REVERSED AND REMANDED.

*Phillips & Phillips* for appellant:

(1) Defendant's demurrer to the testimony at the close of the State's case should have been sustained. There was an absolute failure of testimony to show that the alleged conversion of the money was without the consent of the owner. This was an essential and constituent element of the crime of embezzlement. Without this proof there was no crime proven. There was no testimony to show that the alleged conversion was done with felonious or fraudulent intent. It requires proof of all these facts to constitute embezzlement. R. S. 1899, sec. 1912. It was incumbent on the State to prove every fact necessary to constitute the crime, by the testimony, and beyond a reasonable doubt. There is no such testimony in this record. The presumption that defendant is innocent must in every case be regarded by the jury as a matter of evidence. State v. Brosius, 39 Mo. 534; 1 Greenl. on Ev., sec. 34; State v. Shelley, 166 Mo. 618; 3 Greenl. on Ev., sec. 29. (2) The letter-press copies of letters alleged to have been written by the witness Harris to defendant were, at best, but secondary evidence, and not admissible as testimony, no foundation having been laid for their introduction by showing the inability of the State to produce the originals. State v. Burlingame, 146 Mo. 226; Traber v. Hicks, 131 Mo. 189; Phillips v. Scott, 43 Mo. 89; Davis v. Hilton, 17 Mo. App. 322. There is no evidence that the originals of which these papers purport to be copies were ever properly sealed and addressed to defendant and deposited in the postoffice and postage paid. Hence, there is no presumption that the originals were ever received by defendant. Best v. Ins. Co., 66 Mo. App. 598; Bless v. Jenkins, 129 Mo. 647; Briggs v. Harvey, 130 Mass. 187. (3) The intention with which an act is done is a question of fact for the jury and must be proven like any other fact. State v. Fox, 148 Mo.

526; State v. Gibson, 111 Mo. 92; State v. Stewart, 29 Mo. 419; Elliot's Gen'l Prac., sec. 435; 3 Greenl. on Ev., sec. 13. (4) (a) Where, as here, the statute makes an offense to consist of an act coupled with a specific intent, the doing of the act raises no presumption that it was done with the specific intent. Lawson on Presumptive Ev., p. 271; State v. Fox, 148 Mo. 526; State v. Gibson, 111 Mo. 99. (b) The third instruction given on behalf of the State is in direct violation of the rule announced in the foregoing cases, and in express terms tells the jury that if they "find that the defendant unlawfully converted the money to his own use, they will be authorized to infer therefrom the criminal intent, and that he did at the time intend to embezzle and convert the same to his own use and to deprive the owner of it." Lawson on Presumptive Ev., p. 271; State v. Fox, 148 Mo. 526; State v. Gibson, 111 Mo. 99. (c) The third instruction for the State is further erroneous because of the omission of the word feloniously or fraudulently; the word unlawfully, where used in the said instruction, does not supply the word feloniously or the word fraudulently. State v. Cunningham, 154 Mo. 178; State v. Schilb, 159 Mo. 140. (d) The first instruction given at the request of the State is erroneous, for the reason that it requires the jury to make findings on questions of fact about which there is no testimony upon which to base any such findings, to-wit: It requires the jury to find that the defendant feloniously and intentionally embezzled and converted to his own use the money, etc., without the assent of his employer. There was no proof of any such fact, and therefore no evidence on which to predicate that part of said instruction. (e) The second instruction is erroneous because it ignores entirely one of the constituent elements of the crime of embezzlement, to-wit, that the conversion must be without the consent of the owner. (5) The letters alleged to have been written by defendant to witness Harris were incompetent as

testimony in this cause, because written to a stranger to the proceeding, and there being no proof that he had any authority to represent the alleged owner of the said money. To make a letter to an agent evidence in a case the agency must first be established. Brown v. Bank, 2 Mo. 191; Campbell v. Dent, 54 Mo. 331.

*Edward C. Crow*, Attorney-General, and *C. D. Corum* for the State.

(1) Defendant insists that a demurrer to the testimony should have been given, because he alleges that the record fails to show that the conversion of the money was without the consent of the owner. It is true that the owner of the money did not testify that the same was embezzled without her consent; but the evidence discloses that in the first instance she had employed Mr. Harris, an attorney of Oklahoma, to look after her interest in the collection of the money, and that afterwards Mr. Harris opened up correspondence with the defendant concerning the collection of the same. It is in evidence, too, that the owner of the money, by a written instrument, empowered defendant to receipt for and collect the same. It is further in evidence that the first attorney, whom she employed, was a witness at the trial. It was, of course, incumbent on the State to show that the money was converted without the consent of the owner. But as to this point, plenary proof is not required. It is unnecessary to prove by direct and positive evidence that the conversion was without the consent of the owner. It was sufficient if, from the whole evidence, the jury were satisfied that it was without such consent. State v. Hirsch, 45 Mo. 429; State v. Silver, 130 Mo. 453. (2) During the progress of the trial, the State offered in evidence letter-press copies of the letters written by witness Harris to defendant. These copies were objected to on the ground

that no proper foundation had been laid for their intro-
duction. The State had taken no steps to produce the
originals, which were written by Harris to defendant,
and probably such step was unnecessary, as defendant
could not have been compelled to produce testimony
against himself. Nor did the State go far enough in
the preliminary proof preparatory to the introduction
of the letter-press copies. It did not show that the
letters were properly addressed to the defendant; that
they were deposited in the postoffice, and that the
proper postage was prepaid. But under the view we
take of this case, the introduction of this testimony did
no harm. It will be observed that it was assumed by
the defendant that the correspondence was of the
nature as introduced. Counsel and defendant assumed
that the actual correspondence had between the parties
was before the jury. And though it be conceded that
error was committed in permitting these copies to be
introduced, still, such error will not warrant a reversal.
Defendant was not injured by it. There was nothing
material in these copies which defendant denies. De-
fendant admitted the collection of the money and its
conversion to his own use. In truth, he admitted all the
allegations of the indictment save that the conversion
was with criminal intent. And the only question for
the consideration of the jury was: Did the defendant
intend to convert the money to his own use without the
assent of his employer? The admission of the letter
copies was not prejudicial to him. State v. Adams, 108
Mo. 213; Wharton's Crim. Ev., sec. 682. (3) Objec-
tion is made to the third instruction, in that it warrants
the jury in finding the defendant guilty if they find that
he unlawfully converted the money to his own use. But
we do not think this point is tenable. The instructions
must be read together, and in the first instruction given
at the instance of the State the jury were expressly re-
quired to find that the defendant not only feloniously,
unlawfully and intentionally did embezzle and fraud-

ulently convert said money, but that he did so convert the same with the felonious intent to deprive the said Elizabeth Brummett of said money. And the jury were further advised, in the third instruction, that the word feloniously meant a wrongful act willfully done. State v. Noland, 111 Mo. 497. It is true that to constitute this offense the act of conversion must have been connected with a criminal intent to convert, in order to constitute the crime. But the only intent, required under section 1912, Revised Statutes 1899, is the intent to convert the money to the defendant's use, without his employer's consent.

FOX, J.—On the sixteenth day of February, 1903, the prosecuting attorney of Butler county, Missouri, filed in the office of the clerk of the circuit court of that county an information against one E. R. Lentz, charging him with the embezzlement of $89.38.

The trial from which this appeal was taken resulted in the conviction of the defendant, and his sentence to imprisonment in the penitentiary for a period of two years.

The evidence discloses that Elizabeth Brummett, who, at the time of the trial, lived near Perry, Oklahoma, was entitled to a small share in an estate which was in course of administration in Butler county, Missouri, and that she, in the first instance, placed the matter in the hands of S. H. Harris, an attorney located at Perry, and that Harris in turn placed the matter in the hands of the defendant for collection.

She appointed the defendant as her attorney to collect and receipt for the money. On the twenty-fourth day of March, 1902, the defendant collected from the guardian of Elizabeth Brummett the sum of $89.38, a portion of which he soon thereafter converted to his own use, and after having done this, the record discloses that he wrote a number of letters to Mr. Harris intimating that the money had not yet been collected.

This character of correspondence, emanating from the defendant, began on the twenty-sixth day of April, 1902, after he had collected the money, and continued at frequent intervals, until November 12, 1902, at which time the defendant sent a draft to Mr. Harris for the sum of $66.52, and afterwards, the mistake being called to his attention, he sent another check for the balance he claimed was due, his check being $6.23. This amount not being satisfactory, the correspondence between the two attorneys was continued.

The letters of the defendant, written after the money had been collected, contained excuses as to why he had been unable to collect the same. In one of the letters he states that, under the particular provisions of our law, the settlements of estates, in the probate courts, "lie over one term after filing, before it can be approved, unless the ward is personally present." This letter was written almost four months after the money had been collected. In another letter he speaks of the sickness of the guardian as delaying the settlement. The guardian testified that he did not remember of being sick at all during the year of 1902. This was substantially the testimony on behalf of the State.

The evidence on behalf of the defendant consisted only of the testimony of the defendant. He testified that the reason the money was not sent before was "as much a matter of neglect, as anything else." He admitted that he had used a part of the money, but that he intended to get the money to replace the same, within a few days, and that he was disappointed in getting it, "and the matter was allowed to drag along." He testified that he had no intention of converting the money to his own use.

He further stated that he only used twenty-three or twenty-four dollars of the money collected, that the remainder of it was not touched. As to the correspondence by Harris, the State, over the objections of the defendant, introduced press copies of letters written by

Harris to the defendant. It is unnecessary to reproduce here the contents of those letters. The letters, as well as the objections to their introduction, will be given due consideration in the course of the opinion. After the close of the testimony the court declared the law as follows:

"1. The court instructs the jury that if they believe and find from the evidence in this cause that, at any time within three years prior to the filing of the information in this cause, the defendant was the agent and attorney of a certain private person, to-wit, Elizabeth Brummett, and that the defendant, during the time of his employment as such agent and attorney of said Elizabeth Brummett, was not a person under the age of sixteen years, and that during such employment as such agent did, by virtue of his employment, take or receive into his possession, as the money of said Elizabeth Brummett, the sum of eighty-nine dollars, or any portion thereof of the value of thirty dollars or more, and that after receiving said money the defendant did, at the county of Butler and State of Missouri, and within three years prior to the filing of the information in this cause, feloniously, unlawfully and intentionally embezzle and fraudulently convert said money, or any portion of the same to the amount of thirty dollars or more, to his, the defendant's own use, without the assent of his employer, Elizabeth Brummett, and that he, the defendant, did so convert the same with the felonious intent to deprive the said Elizabeth Brummett of the said money, and that said money, so embezzled and converted by the defendant, then and there belonged to and was the property of said Elizabeth Brummett, then you should find the defendant guilty of embezzlement as charged, and assess his punishment at imprisonment in the penitentiary for a period of not less than two nor more than five years.

"2. If the jury believe and find from the evidence that the defendant did, within three years prior to the

filing of the information in this cause, receive into his possession the money mentioned in the information, or any portion thereof to the value of thirty dollars or more, and that he received the same into his possession by virtue of his employment as the agent and attorney of Elizabeth Brummett, and that he did, within three years prior to the filing of the information in this cause, at the county of Butler and State of Missouri, feloniously, unlawfully and intentionally embezzle and fraudulently convert the same to his own use, you will find the defendant guilty of embezzlement as charged in the information, notwithstanding the jury should believe and find from the evidence that the defendant intended at some future time to restore said money, or that he did thereafter pay or restore same.

"3. The court instructs the jury that the law presumes that every man intends the natural and probable consequences of his own acts, and if you find from the evidence that the defendant unlawfully converted the money, alleged in the information to have been embezzled, to his own use, you will be authorized to infer therefrom the criminal intent, and that he did at the time intend to embezzle and convert the same to his own use and to deprive Elizabeth Brummett of it.

"The court further instructs the jury that feloniously means a wrongful act willfully done.

"4. The court instructs the jury that the defendant is a competent witness in his own behalf, and you must consider his evidence in arriving at your verdict, but in determining the weight that you shall give to his testimony you may take into consideration the fact that he is the defendant and the interest that he has in the result of this case.

"5. The court instructs the jury that the law presumes the defendant innocent of the crime charged against him in this information, and the burden of proving him guilty thereof beyond a reasonable doubt rests upon the State. Now, if after a full and fair review of

all the evidence in the cause, you entertain a reasonable doubt of the defendant's guilt, you should give him the benefit of such doubt and acquit him, but such doubt to authorize you to acquit him on that ground alone should be a substantial doubt founded on the evidence, and not a mere possibility of his innocence."

In addition to these declarations, the court modified an instruction offered by defendant, and gave it as follows:

"The court instructs the jury that the defendant is charged with a felony in this case, that is to say, that he embezzled the sum of thirty dollars or more of the money of Lizzie Brummett. Now, before you can convict the defendant of a felony in this case, you must believe, beyond a reasonable doubt, that Lentz embezzled $30 or more of said Lizzie Brummett's money."

Then followed an instruction given by the court upon its own motion, which was as follows:

"The jury are instructed that the mere conversion of money to the agent's use after receiving same, and a failure to pay it over, do not constitute the crime of embezzlement charged in the indictment, but there must be in the mind of the agent at the time of such conversion a felonious intent to appropriate it to the agent's use and to deprive the owner of it. And the jury must be satisfied by the evidence beyond a reasonable doubt of the existence of such felonious intent at the time of the conversion, or they must acquit the defendant.

"And you are further instructed that in arriving at the amount of money converted by defendant to his own use, if you believe any sum was converted by him, he had the right to deduct from the amount of money received by him, if any, a reasonable sum for services rendered by him in collecting the said money."

The instructions offered by the defendant and refused by the court will be treated of during the progress of the opinion.

Upon the submission of the cause, the jury returned

a verdict of guilty, assessing defendant's punishment at two years in the penitentiary. After an unsuccessful motion for new trial, the defendant in proper time and form prosecuted his appeal to this court and the record is now before us for consideration.

OPINION.

Numerous errors are assigned by counsel for appellant in this cause. We will give the complaints before us for consideration such attention as their importance demands.

The correctness of instruction numbered 2 is challenged, upon the ground that it omits to require the jury to find all the essential elements of the defense.

The statute defining the offense upon which this indictment is predicated, provides:

"If any agent, clerk, apprentice, servant or collector of any private person, or of any copartnership, except persons so employed under the age of sixteen years, or if any officer, agent, clerk, servant or collector of any incorporated company, or any person employed in any such capacity, shall embezzle or convert to his own use, or shall take, make way with or secrete, with intent to embezzle or convert to his own use, without the assent of his master or employer, any money, goods, rights in action, or valuable security or effects whatsoever, belonging to any other person, which shall have come into his possession or under his care by virtue of such employment or office, he shall, upon conviction, be punished in the manner prescribed by law for stealing property of the kind or the value of the articles so embezzled, taken or secreted." [Sec. 1912, R. S. 1899.]

It is apparent that the information in this cause is based upon that subdivision of the statute which denounces the embezzlement or conversion of money or property by the agent without the assent of his master or employer. It is essential, first, that the information charge all the elements of the offense, as provided by

the statute; second, the proof upon the trial must at least make out a prima facie showing of the commission of the offense as charged; third, the instructions of the court must require the jury to find every essential fact necessary to constitute the offense created by the statute.

It will be observed that instruction numbered 2 fails to require the jury to find that the embezzlement or conversion of the money by the agent was "without the assent of his employer."     By this omission that instruction was erroneous, because it failed to require the jury to find from the testimony an essential element of the offense defined by the statute.     It was important and essential to a valid information that it contain that allegation, and although it is a negative one, yet it is equally important that at least some proof be made of it sufficient to authorize the jury to find that the conversion was without the assent of the employer.     It is argued by respondent that instruction numbered 1 fully met this requirement, hence there was no error in the omission in number 2.     That would be true if instruction numbered 2 was only applicable to some particular element of the offense, and undertook to direct the jury as to that alone; but an examination of instruction numbered 2 will demonstrate that it purports to cover the entire case, as doubtless it was intended to do.     It tells the jury in detail every fact that must be found, except the one herein indicated, in order to authorize a conviction, and concludes in the usual form that if they find such facts they will find the defendant guilty of embezzlement as charged in the information, notwithstanding the jury should believe and find from the evidence that the defendant intended at some future time to restore said money or that he did thereafter pay or restore same.

With these two instructions, both attempting to cover the entire field, one correct and one erroneous, the jury are left to conjecture which one shall be their guide

in reaching a correct conclusion. This instruction is further criticised in its conclusion as to the intent at some future time to restore said money, etc., etc.

A similar declaration was approved in State v. Noland, 111 Mo. 473; that case, however, is to be distinguished from the one at bar, for the reason that the statutes upon which they are based are materially different. The Noland case was a charge of embezzlement by a public officer, in respect to a trust fund. It is apparent upon the face of the statute that, any sort of speculation or conversion by a public officer, of the trust fund, makes the offense complete, and it is immaterial as to what he intended to do in the future.

It is true in this case, if the offense or the act of felonious conversion, with the intent to permanently deprive his employer of it, was committed, then the offense was complete, and any subsequent intention to restore it would not constitute any defense to the crime charged.

The intent to permanently deprive the owner of his property, and the intent at some future time to restore it, cannot be very well entertained at the same time, hence it will suffice to say that this instruction, as applicable to the offense charged in this case, should be made to refer to an intention subsequently formed to the commission of the offense; in that form it would declare the law correctly.

Again, it is urged by learned counsel for appellant that instruction numbered 3, which substantially tells the jury that the criminal intent in this cause may be inferred from the unlawful conversion of the money charged to have been embezzled, is error. In support of this insistence, our attention is earnestly directed to the cases of State v. Fox, 148 Mo. 517; and State v. Gibson, 111 Mo. loc. cit. 99.

This distinction upon the subject of necessary proof of intent must be kept in view. As was said in State v. Gibson, supra: "Where the statute makes an

offense to consist of an act coupled with a specific intent, the doing of the act raises no presumption that the act was done with the specific intent; but such intent, as well as the act, must be found by the jury as a matter of fact before a conviction can legitimately result.''

But on the other hand, if the statute does not, in creating the offense, couple with the commission of the act a specific intent, but simply makes the commission of the act a criminal offense, and the act is wrong in itself, then the rule is otherwise, and the intent may be inferred from the unlawful commission of the act.

This leads us to inquire, does the statute upon which the information is predicated in this cause couple with the commission of the act a specific intent in order to constitute the offense charged? It is obvious, from the brief and argument of counsel for appellant, that there is a clear misconception of the elements of the offense charged in this information.

An examination of the provisions of section 1912, Revised Statutes 1899, which is the basis of this charge, will demonstrate that the statute creates two distinct classes of offenses; in other words, there are two subdivisions of it, each one defining the acts which constitute the offense.

It will be observed that the first subdivision creates the offense with which defendant is charged. It substantially provides that the embezzlement or conversion of money or property by an agent, without the assent of the employer, shall constitute the offense. It will be noticed in that subdivision, that the offense consists of the actual embezzlement or conversion of the money or property. The other subdivision refers to a different state of facts in order to constitute an offense by its terms. It provides, not that the offense shall consist of the actual conversion or embezzlement of the property, but the doing of certain things, that is to say, ''To take, make away with or secrete the money or property, with the intent to embezzle or convert to his own use.'' It is

too plain for discussion that the terms, "Intent to embezzle or convert to his own use," have no application to the first subdivision of the statute, which makes the offense the actual commission of the act of embezzlement or conversion to his own use. It is illogical to say with the intent to do an act, when the act itself is done, hence the question of intent to embezzle or convert to his own use has no application to the charge in this case. If the intent to embezzle or convert to his own use is to be construed as coupling a specific intent with the commission of the act of embezzlement or conversion, as provided by the first subdivision, then the information itself would be invalid, for such intent would constitute an essential element of the offense, and hence would have to be alleged in the information. The information in this case does not contain any such allegations, and to charge the offense defined under the first subdivision, which consists in the embezzlement or conversion of the property, there is no necessity for such allegations. Such allegations would only be necessary and vital when applied to the offense created in the second subdivision of the section, that is, the charge of taking, making way with or secreting the money or property, with the intent to embezzle or convert to his own use.

In other words, this statute created two classes of offenses: one consists in the doing of the act itself, which is prohibited; and the other, of doing certain other things in respect to the subject-matter, with the intent to do the prohibited act. It follows from this that the statute creating the offense with which defendant is charged, does not couple with the commission of the act a specific intent in order to constitute the offense, hence the rule announced on this subject in State v. Fox, and State v. Gibson, supra, is not applicable.

An examination of these cases will show that they were announcing a rule applicable to a statute which made the doing of an act for a particular purpose a

criminal offense. It was correctly decided in those cases that the doing of the act itself would not warrant the presumption or inference that it was done for the particular purpose.

The embezzlement or conversion by an agent of property that came to his possession by reason of his employment is the essence of the offense denounced by the statute, and the act in itself is a wrongful one, and if the commission of this wrongful act is established, it was not error for the trial court to advise the jury that they would be authorized in inferring the criminal intent. The criminal intent in this case is not an intent to embezzle or convert to his own use property or money. The charge is the commission of the act itself, and not the doing of something else, with the intent to commit the act. The criminal intent necessary in this case is to deprive the owner of his property. The result of embezzlement is to deprive the owner of his property, and in our opinion it is not an illegitimate inference, where property is embezzled or converted, as contemplated by the statute, that the result of such act was intended by the perpetrator of it.

It was ruled in State v. Noland, supra, that an instruction identical with the one challenged in this cause was not erroneous. In State v. Cunningham, 154 Mo. l. c. 179, it was said by this court: "No one can be convicted of a felony in the absence of an intent to do a criminal act, but such intent in case of embezzlement may be inferred from a felonious or fraudulent conversion"—citing in support of that rule State v. Noland.

In case of Spalding v. People, 172 Ill. l. c. 55, in discussing the law as applicable to embezzlement, quoting from Bishop's New Criminal Law, vol. 2, secs. 372, 373, 379, it is said: "The gist of common law larceny is the felonious 'taking' of what is another's, with the simultaneous intent in the taker of misappropriating it; but in the statutory embezzlement there is no felonious taking, for the thing comes to the servant by delivery,

either from the master or a third person, so that the question now is, by what act, after it is received, does the servant commit the embezzlement? The rule of law appears only indistinctly in the books. Still, we may infer from the authorities, and from the reasons inherent in the question, that if the servant intentionally does with the property under his control what one must intend to do with property taken to commit larceny of it, he embezzles it, while nothing less is sufficient; or, assuming the needful criminal intent to exist, he must and need only to do what in our civil jurisprudence is termed 'conversion,' defined to be any dealing with the thing which, impliedly or by its own terms, excludes the owner's dominion. To illustrate: if the servant, instead of delivering the property to his master or another as required by his duty, pledges it for his own debt, or runs away with it, or neglects or refuses to account for it, or otherwise wrongfully diverts its course towards its destination to make it his own, he embezzles it. The felonious or otherwise fraudulent intent is an essential element, yet if a man commits the act of embezzlement the presumption is that he means to embezzle.''

So it may be said in support of this instruction criticised, that while a fraudulent intent to deprive the owner of his property is an essential element in the offense of embezzlement, yet if a man commits embezzlement by converting to his own use the property of his employer, it is but a reasonable and fair presumption that he means to embezzle, and but a natural inference that he intends the result of such act, which is the deprivation of the owner of his property.

It is also insisted that the instruction now under consideration is erroneous in the use of the term *unlawful conversion* of the property instead of felonious and fraudulent conversion of the property, as a basis for the inference of criminal intent. The terms of the instruction must be considered together with all the other

instructions in the case. The court very fully and fairly, in instruction numbered 1, defined the nature and character of the conversion which would be deemed unlawful and authorize a conviction. This, with the instructions on the part of the defendant, fully advised the jury on the subject of conversion, and when the declarations are all considered, as presenting the law in the case, the term, "unlawful conversion," as used in the instruction now being considered, could have reference only to the character of conversion, which had been fully explained to the jury and they could not have been mislead by the use of that term.

This court, in State v. Silva, 130 Mo. l. c. 463, in discussing the question of intent, as applicable to the offense of embezzlement, very clearly announced the correct rule. GANTT, J., speaking for this court, said: "When the agent or servant takes his employer's money with the intent to convert it to his own use without the master's knowledge, that moment he is guilty of the criminal intent denounced by the statute. The law will not enter upon the inquiry with him as to his further intention of returning the money at a later period or making good his shortage when called to account. It suffices for the State to prove an intent on the part of the defendant to do that which the law in fact forbids. The effort of counsel to have the court require the jury to find some other or further intent was to open the door for argument that the defendant might knowingly and intentionally do the very act which the law denounced as criminal and yet not be guilty, provided he did not intend to keep the money permanently or intended to return it in the future. But when an act forbidden by law is intentionally done the intent to do the act is the criminal intent which imparts to it the character of the offense, and no one who violates a law which he is conclusively presumed to know can be heard to say he had no criminal intent in doing it. [State v. Manley, 107 Mo. 364; State v. Pratt, 98 Mo. 482; State

v. Adams, 108 Mo. 208; State v. King, 86 N. C. 603; Bishop's New Crim. Law, sec. 300.] The taking of an employer's money by his clerks or agents is legally wrong in itself."

The action of the trial court in giving the instruction was not erroneous.

Upon the proposition that the press copies of the letters written by Harris to the defendant were improperly admitted in evidence, it is unnecessary to burden this opinion with lengthy discussion of that question. It is practically conceded, with commendable frankness by the Attorney-General, that the proper foundation was not laid for the introduction of such copies, but it is argued that the contents of them being practically admitted by defendant when on the witness stand, this error was harmless. There is a great deal of force in this position, as a careful reading of defendant's testimony will indicate; however, he denies absolutely the receipt of one of the letters, and says at other points of his testimony that part of the correspondence is correct and other parts he has no recollection of.

These press copies of letters written by a stranger to this proceeding clearly fall within that class of testimony uniformly recognized as "secondary evidence."

The original letters being the primary, the copies must be placed in the secondary class. This testimony was only admissible after proper and unavailing efforts to secure the originals had been made. The mere fact that they could not compel the production of the originals, would not avoid the necessity of at least making the effort to secure them.

It will suffice to say upon this question that upon the retrial of this case, if it is ever retried, the proper foundation can be laid for the introduction of this testimony.

The instructions refused were covered by those given by the court in the case, except that it should be clearly stated that a mere dispute as to the reasonable-

ness or unreasonableness of the amount retained for legal services should not be considered by the jury as a conversion of that part of- the money they might find was unreasonable. For if the amount retained for services was unreasonable, yet, if it was retained in good faith as compensation for such services, it would not constitute the offense of embezzlement.

As to the remarks of the prosecuting attorney in his closing argument, it is sufficient to say that we still approve what was said upon this subject in State v. Shipley, 174 Mo. 512. The remarks in the case at bar differ in some material respects from the Shipley case, and as this case is to be retried it is unnecessary for this court to express an opinion as to whether, if standing alone, the remarks of counsel would or would not be reversible error. Suffice it to say that the remarks would have been better left unsaid than indulged in.

We have thus given expression to our views upon this case from the record before us. Before leaving the subject we deem it not inappropriate to say that, not only the profession, but every citizen, should feel a profound interest in the maintenance of the integrity of the legal profession. This profession not only furnishes a broad field for the human mind to feast upon in logic and deep thought, in the application of true legal principles, but is also one in which, if the practice of it is on a high plane, much good will result. On the other hand, if practiced upon a low standard much harm will be accomplished. While the evidence in this cause in some respects is damaging to the defendant, and we by no means commend his business methods in this transaction, yet there are some features of the testimony that are not of that clear, undoubting character that is required to establish a felonious and fraudulent embezzlement of the owner's property, as contemplated by the statute.

If the defendant is guilty of the offense charged, he should be punished, and it is commendable in Mr.

Harris, or any other member of the profession, to use all legitimate efforts to develop all the facts surrounding the transaction; on the other hand, this is a criminal case of a serious nature, and, *even though only a lawyer,* he should not be convicted on mere suspicion, or even a strong probability of guilt, but the testimony should be clear and convincing, fully satisfying the minds and consciences of the jury, and, unless it is of this character, he should go acquit.

With the view that the State may have an opportunity of fully developing all the facts surrounding this case, for the reasons indicated the judgment in this cause is reversed and cause remanded.

*Gantt, P. J.,* concurs; *Burgess, J.,* absent.