HOFFMAN HEADING & STAVE COMPANY, Respondent, v. ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY, Appellant.

St. Louis Court of Appeals, May 22, 1906.

1. **EVIDENCE: Secondary Evidence: Letterpress Copies: Harmless Error.** The admission of letterpress copies of letters in evidence when no effort to procure the originals had been shown was error; but the error was harmless where the facts shown by the letters were shown by other testimony.

2. ———: **Common Carriers: Shipper's Demand for Cars.** In an action against a railroad company by a shipper for damages

on account of failure to furnish cars, where the petition alleged that the plaintiff had "in the month of July" a quantity of merchandise to ship and demanded cars at that date, it was competent to show that he made demand for cars at various times after that date.

3. **COMMON CARRIERS: Shipper's Demand for Cars: Perishable Goods.** It is the duty of a railroad company to supply a a patron with cars to move promptly such freight as might be expected according to the usual volume of business and where there is timely demand for cars on the part of the shipper the railroad company is answerable for the damage sustained by the shipper by reason of failure to furnish such cars, and it is not necessary for the demand to be accompanied with a notice that the goods awaiting transportation are perishable, in the absence of any showing that there was extraordinary traffic which overtaxed the capacity of the railroad company's rolling-stock.

4. ———: ———: **Agency.** Where an officer of a railroad company called "commercial freight agent" was interviewed by a shipper regarding the supply of cars and promised to see that sufficient cars were furnished and where it was shown also that it was customary for conductors to transmit to the train-master of the railroad company requests for cars and that the commercial freight agent had a right to take up such matters with the trainmaster, evidence of demand for cars upon the commercial freight agent was admissible and those facts justified a finding by the jury that a request made to him was binding on the defendant although the train master had charge of such matters.

Appeal from Cape Girardeau Circuit Court.—*Hon. Henry C. Riley,* Judge.

AFFIRMED.

*Martin L. Clardy, James F. Green* and *E. A. Green* for appellant.

(1) The letterpress copies of letters from the Hoffman Heading & Stave Company to C. G. Miller, of Cairo, Illinois, were inadmissible in evidence for two reasons: (a) Because the averments in the petition only refer to matters which occurred in the

month of July, 1903, and the letters were all written subsequent to that time.   The evidence must correspond with the allegations and be confined to the point in issue. Eddy v. Baldwin, 32 Mo. 369; Halpin Mfg. Co. v. School District, 54 Mo. App. 371; Bailey v. Kansas City, 189 Mo. 503, 87 S. W. 1182; Ely v. Railway, 77 Mo. 34; State v. Psycher, 179 Mo. 140, 77 S. W. 836; State v. Parker, 96 Mo. 382, 9 S. W. 728.  (b)  Such copies of the letters were inadmissible for the further reason that no notice to produce the originals had been served upon the defendant.   Copies of letters written by one party to another are admissible only after proof of service of notice to produce the originals upon the party having possession of the same.   Lewin v. Dille, 17 Mo. 64; Coffman v. Ins. Co., 57 Mo. App. 647; Merrell Chem. Co. v. Nickells, 66 Mo. App. 678; State v. Lentz, 184 Mo. 223. (2)   Armine's testimony as to conversation with C. G. Miller about the first of August, 1903, was also inadmissible, because it was subsequent to the matters alleged in the petition.   Defendant can only be called upon to defend, in this action, the offenses charged in the petition.   McCord Rubber Co. v. St. Joe Water Co., 181 Mo. 678, 81 S. W. 189.   In the second place this conversation was inadmissible because it was not shown that Miller had any connection with the matter of furnishing cars on the part of the railroad company.  A party cannot be bound by statements or admissions of a person who is not his agent in the matter referred to at the time.   Watson v. Race, 46 Mo. App. 546; The Midland Lbr. Co. v. Kroeger, 52 Mo. App. 418; Bevis v. Railroad, 26 Mo. App. 19.   (3)   The letters from Miller to the Hoffman Heading & Stave Company are inadmissible for the same reasons.   The mere fact that Miller used the letter heads of the Missouri Pacific Railroad Company did not show that he had any connection with the matter of furnishing cars at Caney Creek or that he was

authorized to represent the defendant railway company. Stove Co. v. Adams Hdw. Furniture Co., 93 Mo. App. 237; 5 Thompson on Negligence (2 Ed.), sec. 6442, p. 884; Thurman v. Wells, 18 Barb. (N. Y.) 500; Mo. Coal & Oil Co. v. Railroad, 35 Mo. 84.

*Wilson Cramer* for respondent.

GOODE, J.—This action was instituted by the plaintiff corporation to recover damages sustained by it in consequence of the failure of the defendant railroad company to accept and transport freight offered by plaintiff for transportation at defendant's station of Caney Creek, in Scott county. Defendant appealed from a judgment for plaintiff. In the year 1903, plaintiff was engaged in getting out of the forest elm logs, which it sold to the Disher Hoop & Lumber Company to be manufactured into barrel hoops. Caney Creek is what is known as a "blind station;" that is, one where there is no station house or agent, but at which all passenger and freight trains stop when flagged. An employee of the defendant styled "Commercial Freight Agent" and whose name is Miller, had visited Caney Creek and inquired of plaintiff or T. J. Armine, who was cutting the logs, if plaintiff was supplied with cars as they were needed. Armine told Miller the supply of cars was inadequate and Miller promised that enough should be furnished to afford plaintiff timely transportation for its logs. It was necessary to have the logs moved promptly after they were offered for shipment; otherwise they would deteriorate in consequence of "souring;" a process the sap goes through after the logs are cut. It destroys the usefulness of the timber for the manufacture of hoops, because hoops made from soured logs are brittle and break under a slight strain. Plaintiff got out 140,000 feet or more of logs in July and August, 1903, but was only furnished twelve or

thirteen cars by the defendant. As a result of the lack of cars, more than 100,000 feet of logs soured on the ground and this action is for the loss thereby entailed on plaintiff. The answer was a general denial and the testimony introduced by defendant was directed toward proving that all proper requests for cars were complied with; that the logs could have soured very little in the time they lay at the station and that the depreciation in value consequent on souring was slight, because the logs were worth nearly as much afterwards for other purposes as they would bring if unsoured for hoop manufacture. Many letters written by plaintiff to Miller from August 13th to November 13th and containing repeated requests for cars, were put in evidence. These documents were letterpress copies of the originals which had been written and mailed by plaintiff and were objected to by defendant, not only as immaterial, but because no notice had been served on defendant to produce the originals. An exception was saved to the admission of the copies. That error was committed in admitting them when no effort to procure the originals had been shown, is scarcely denied by plaintiff's counsel; and, beyond doubt, the copies were incompetent under the circumstances. [Traber v. Hicks, 131 Mo. 180, 32 S. W. 1145; State v. Lentz, 184 Mo. 223, 242, 83 S. W. 970.] No objection was made to the letters except that they were secondary evidence. The error of their admission was harmless, because the oral testimony and Miller's letters to plaintiff showed numerous demands for cars were made by plaintiff and that cars were promised repeatedly, pursuant to those demands, but never furnished. The uncontradicted testimony proved some requests for cars were preferred to the defendant's train conductors and many to Miller, and that plaintiff suffered a loss because too few were supplied. There was testimony for the defendant that the mode of demanding cars at Caney

Creek, where there was no station agent, was for the shipper to notify the conductors of freight trains that cars were needed. Two of these conductors who were put on the stand did not deny that plaintiff had asked them for cars. That requests were made frequently was hardly disputed, the contention being that they were addressed improperly to Miller, who was unauthorized to act in response.

The petition avers that plaintiff had on hand at Caney Creek for shipment "in the month of July" a stated quantity of logs, demanded cars to load them and that defendant failed to furnish cars. The letters to Miller were written subsequent to July and defendant asserts they were incompetent for that reason. Other evidence was objected to on the same ground. We see no force in this point. The testimony showed that most of the logs were ready for shipment in July and that plaintiff continued to request cars for months, the logs meanwhile lying at the station and spoiling. The date laid in the petition was immaterial; and, besides, there was no variance between the allegation that the logs were at the station in July and evidence to show they remained there, while plaintiff was vainly requesting cars, until November.

It was contended that Miller, the commercial freight agent, whose office was in Cairo, Illinois, was not the right person to ask for cars and, therefore, blame cannot be imputed to defendant for failing to furnish cars in response to requests made to him. The court was asked to instruct the jury that unless plaintiff notified defendant's superintendent that the logs were ready for shipment and would become unfit for use unless moved, plaintiff was entitled to no verdict. Such an instruction would have ignored the usage recognized by the defendant, of notifying its train conductors to furnish cars when stuff was ready to be shipped from Caney Creek. Neither was plaintiff bound to give notice

that the logs were likely to spoil. No extraordinary traffic, which overtaxed the capacity of defendant's rolling-stock, was interposed as an excuse for not furnishing enough cars to plaintiff; and defendant was under the legal duty to supply plaintiff and other patrons with cars to move promptly such freight as might be expected according to the usual volume of business offered for shipment. [Thayer v. Bruchard, 99 Mass. 508; 4 Elliott, Railways, sec. 1470.] If timely demands were made for cars and defendant failed to furnish them without having a lawful excuse for the failure, it is answerable for the proximate damage sustained by plaintiff, whether the demand was accompanied with notice of the danger of the logs souring or not. The latter circumstance might be material if an unusual traffic, creating an unexpected demand for cars, had been shown. Then some preference might be shown to shippers who had perishable goods awaiting transportation. Defendant's agent, Miller, and the conductors knew, and were notified, of the danger of the logs from the delay, and if the railway company's knowledge of the fact was material, it was proved to have had both knowledge and notice. The instruction under consideration was erroneous and the court ruled correctly in refusing it.

We return to the question of the effect of demands on Miller for cars. No doubt plaintiff must show the logs were offered for shipment to some person having authority to act for defendant in shipment matters; in other words, that plaintiff took the proper step to contract for shipment. [Little Rock R. R. Co. v. Conatser, 61 Ark. 560.] Miller had interviewed plaintiff regarding the supply of cars and had promised to see that sufficient cars were furnished. He made the like promise repeatedly in the correspondence. Miller's dealing with plaintiff in regard to cars was routine matter within his authority, as was shown by a letter which

passed between him and defendant's trainmaster at De Soto. The testimony for defendant is that it was the duty of conductors to transmit to the trainmaster requests for cars. It appears that Miller's right to take up such a matter with the trainmaster was recognized. The facts justified a finding by the jury that a request for cars made to Miller was binding on the defendant as within the apparent scope of Miller's agency, if they did not establish his authority as a legal conclusion. Defendant requested no charge that the jury must find Miller had authority, or apparent authority, to represent defendant in receiving and attending to plaintiff's requests for cars, before defendant could be put in the wrong for not complying with requests preferred to Miller. Now as there was proof of requests to others as well as to Miller, the only way to question the latter's authority, there being evidence to prove he had authority, was by an instruction submitting an issue of fact regarding it. A general direction to find for defendant would have been improper, even if Miller was not empowered to act, in view of the testimony regarding requests to conductors.

As there was prima-facie proof that Miller's agency included the matter in controversy, we hold that his letters to plaintiff and his conversation with Armine were competent. The main objection urged against these portions of the evidence is that the letters were written, and the conversation occurred, subsequent to the date laid in the petition; a point we have considered.

It is insisted that the evidence showed most of the logs were cut early in July and all by the first day of August; that they lay on the ground thirty days before cars were requested and soured prior to the request. The first complaint of inadequate car service appears to have been made on August 13th. The evidence is far from conclusive that all or any of the logs had become sour by then. This question was one for the jury.

The judgment is affirmed. All concur.