JAMES MUSIC COMPANY, Respondent, vs. BRIDGE and another, Appellants.

*January 29—February 18, 1908.*

*Sales: When completed: Affirmance: Rescission: Election of remedies: Fraud: Damages: Right to stoppage in transitu.*

1. Where a bill of sale has been duly executed and delivered, the cash payment agreed upon and made, and the notes agreed upon delivered, so that the consideration has passed, nothing further is necessary to make a complete transfer of title to the purchaser and entitle him to possession.

2. A party to a contract cannot rescind and affirm in the same breath, and where a party to a sale seeks to hold the property as security for the payment of notes given for the purchase, he elects in the most unequivocal terms to affirm the sale.

3. Where a party to a sale, with full knowledge of the facts, has elected to affirm the sale, he cannot afterwards rescind.

4. There can be no recovery of damages against a plaintiff for an alleged fraud where the court has found on sufficient evidence that the transaction involved is entirely free from fraud.

5. Where a representation, alleged to be fraudulent, consisted of a statement that the purchaser of a stock of goods proposed to continue the business at the old stand, it does not present a case of actionable fraud, since it is simply a statement of future intention and not of an existing fact, and, while reprehensible if untrue, it affords no basis for rescission.

6. A promise or a representation, to be actionable, must have been relied upon or served as an inducement to the consummation of the contract.

7. In order to give the right to stoppage *in transitu* there must in fact be a transit between buyer and seller—the goods must be in the possession of a carrier or middleman,—and the buyer must be shown to be actually insolvent.

APPEAL from a judgment of the municipal court of Marathon county: LOUIS MARCHETTI, Judge. *Affirmed.*

Replevin for a number of pianos, organs, and piano stools. In and prior to the month of September, 1905, the parties conducted rival stores for the sale of musical instruments in the city of Wausau. On the 29th day of that month the de-

fendants executed and delivered to one F. B. Peckham a bill of sale of their stock of instruments and stools, together with the good will of the business and some other property (the instruments and stools being the same now in suit), for the expressed consideration of $1,300, and at the same time assigned and delivered to Peckham the lease of the store in which the goods were and where defendants were doing their business. Peckham then went to the plaintiff's store and sold the pianos, organs, and stock to plaintiff for $1,000 in cash, and immediately returned to defendants' store and paid the defendants $400 in cash and delivered them his note for $406 due in ninety days. He had previously given to defendants two ninety-day notes for $332 and $162, respectively, making in cash and notes the sum of $1,200; and it was then agreed between defendants and Peckham that he (Peckham) should not take the piano wagon and certain other property which was included within the bill of sale and should be credited with $100 therefor. Mr. E. M. James, president of the plaintiff company, on the same day came to defendants' store and looked over the goods. The defendants were surprised to find that he had purchased the goods, and made objections to his taking the goods until the price was fully paid in cash. During the next few days several conversations took place between Mr. James and the defendants. Mr. James attempted to take possession of the goods and the defendants declined to surrender either the goods or the store, and plaintiff finally brought this action of replevin. By their answer the defendants claimed that there was a fraudulent conspiracy between Mr. James and Peckham by which Peckham was to represent to defendants that he proposed to purchase the goods and carry on the business himself, whereas in fact he was to purchase them as agent for James; and further, that a part of the scheme was that Peckham should pay defendants only $400 in cash and give his notes for the balance, and then turn the goods over to

James as an innocent purchaser and depart from the state, leaving the defendants to pursue their remedy on the notes in the state of Illinois. The answer further claimed a lien on the goods for $800 with interest, and demanded judgment for that sum against the plaintiff. No rescission of the contract was sought. The action was tried by the court, and a brief opinion was filed in which the court said that the sale to Peckham was tainted with fraud, but that plaintiff was not a party to Peckham's fraud and had a right to make the purchase relying on the bill of sale given by the defendants to Peckham. The court also made general findings to the effect that the plaintiff was the owner and entitled to the possession of the property in suit, and assessed the value thereof and the damages sustained, and entered judgment for the plaintiff, with costs, from which the defendants appeal.

For the appellants there were briefs by *Hurley & Jones,* attorneys, and *T. C. Ryan,* of counsel, and oral argument by *M. A. Hurley.*

For the respondent there was a brief by *Brown, Pradt, Genrich & Anderson,* and oral argument by *Neal Brown.*

WINSLOW, C. J.    The evidence shows conclusively that the sale of the property in question by the defendants to Peckham was complete before any contention arose between the parties. A bill of sale had been duly executed and delivered, the cash payment agreed on had been made, and the notes agreed on had been delivered, so that the consideration had passed and the lease of the store containing the goods had been assigned and delivered to Peckham. Nothing further was necessary to make a complete transfer of title to Peckham and entitle him to possession. *Abraham v. Karger,* 100 Wis. 387, 391, 76 N. W. 330. If the defendants had in fact been defrauded they might doubtless rescind the contract or affirm it and recover damages. If they chose to rescind they must, under well-established legal principles,

return the consideration so as to restore the other party to his original situation. They cannot both rescind and affirm in the same breath. The partial exception to this rule noted and acted upon in *Friend Bros. C. Co. v. Hulbert,* 98 Wis. 183, 73 N. W. 784, and *Gay v. D. M. Osborne & Co.* 102 Wis. 641, 78 N. W. 1079, has no application here. In the present case the defendants are seeking to hold the property as security for the payment of the notes, and they have thus in the most unequivocal terms elected to affirm the contract. Having elected to affirm with full knowledge of the facts they cannot afterwards rescind. Nor can there be any recovery of damages against the plaintiff, for the reason that the court has found upon sufficient evidence that it was entirely free from fraud. Nor does it appear that there was in fact anything in the transaction amounting to actionable fraud. The alleged representation made by Peckham that he proposed to continue the business at the old stand was simply a statement of future intention and not of an existing fact, and, while it might be reprehensible if untrue, it affords no basis for rescission. *Tufts v. Weinfeld,* 88 Wis. 647, 60 N. W. 992. Furthermore, in the present case there is no evidence that this promise or representation was relied on by the defendants or served as an inducement to consummate the trade.

It was suggested that there might exist a right of stoppage *in transitu* which would justify the defendants in holding the property until the notes were paid. But in order that this right should exist there must in fact be a transit between buyer and seller—that is, the goods must be in the possession of a carrier or middleman—and the buyer must be shown to be actually insolvent, neither of which facts appears in the present case. 26 Am. & Eng. Ency. of Law (2d ed.) 1086–1089.

The judgment must therefore be affirmed.

*By the Court.*—It is so ordered.