BEERS, Appellant, vs. ATLAS ASSURANCE COMPANY, LTD., and others, Respondents.

*December 6, 1933—May 1, 1934.*

*William G. Wheeler* of Janesville, for the appellant.

For the respondents there was a brief by *Wolfe & Hart,* attorneys for all defendants except the Western Fire Insurance Company, and by *Bender, Trump, McIntyre & Freeman,* attorneys for Western Fire Insurance Company, all of Milwaukee, and oral argument by *H. O. Wolfe.*

The following opinions were filed March 6, 1934:

ROSENBERRY, C. J. From the amended complaint it appears that the plaintiff, one Cora G. Beers and the Rock County Insurance Agency, had since October, 1918, conducted a general insurance business. In view of the fact that we do not reach the second ground of the demurrer, which involves the validity of an assignment to the plaintiff of any cause of action which Cora G. Beers and the Rock County Insurance Agency might have, we shall in referring to the contract refer to the parties of the first part as plaintiff, although there were in fact three parties to the contract. This is merely a matter of convenience. The defendant insurance companies were represented by George G. Wright, Byron K. Olinger, Robert K. Meeker, and Cecil L. Davis, who will be referred to as trustee defendants. The insurance companies will be referred to as insurance company de-

fendants. The complaint is long and contains much evidentiary matter. After setting out the corporate character of the insurance company defendants, there is alleged in the complaint in considerable detail the nature of the business carried on by the plaintiff; assignment of the cause of action by Cora G. Beers and the Rock County Insurance Agency; that the year 1932 was one of great financial distress; that the plaintiff had been unable to make collections, the nature of the agency, relations existing between the plaintiff and the insurance company defendants.

The complaint alleges that the defendants falsely and fraudulently represented to the plaintiff that they knew he was having a hard time collecting premiums; that they wished to put the business under a trust arrangement; that the trustees would open a separate bank account, and that no action was desired to be taken that would in any way interfere with plaintiff's control over his property or business; that during the time of the trusteeship plaintiff was to receive a salary of $150 per month; that plaintiff should continue in possession of the business and property until the accounts owing to the insurance company defendants should be paid.

That on October 12, 1932, the defendants, with intent to deceive and defraud the plaintiff and his assignors, stated that they had prepared a trust agreement in accordance with their previous negotiations which was presented to plaintiff; that the defendants "falsely and fraudulently represented to plaintiff and his said associates, that the defendants had no desire or intention of interfering with plaintiff and his associates," and repeated all of the false and fraudulent representations made on October 4th; and "in addition they falsely and fraudulently stated that they wished the agreement signed in order that they might open a trustee account at a local bank, in order that the plaintiff, in conducting the

business of the agency, might deposit to the account of the trustees any amounts collected by him." Further, "that while the agreement contained a power of sale, that power would never be exercised as long as plaintiff was faithful in his care of and attention to said business, nor would defendants in any way attempt to oust plaintiff and his associates from the possession, control, and management of said business, or interfere therein except as to disposition of the income thereof."

It was further alleged that the plaintiff wished to consult his banker, but that defendants persuaded him not to, representing that it would block everything, which representations were false and fraudulent.

It is then alleged that plaintiff, in reliance upon the false and fraudulent representations made by defendants, signed the contract known and described in the case as Exhibit A; that the plaintiff was induced to rely upon the representations made because of his long association in business with the defendants. It is then alleged that—

"All of said representations were false and fraudulent in that the defendants had no intention of allowing plaintiff, said Cora G. Beers or the Rock County Insurance Agency, to continue said business, or to be connected with it in any manner; or of permitting them to redeem said property from the indebtedness therein mentioned, and for which such agreement purported to be security; but were made for the fraudulent purpose of acquiring possession of said property and business, in order that they might convert the same to their own use and defraud plaintiff, said Cora G. Beers and said Rock County Insurance Agency of the same."

That the defendants had no intention of carrying out said contract or any part thereof except to gain possession of said property and defraud the owners.

"That the so-called trust agreement was not intended by the defendants as a contract, but was merely an instrument

whereby the unlawful and fraudulent scheme of defendants might be accomplished; the possession of said property obtained, and plaintiff, Cora G. Beers, and Rock County Insurance Agency defrauded thereof, and that that was the only purpose of defendants in securing it.

"There was no element of good faith in the negotiation of said agreement, but that the same was intended to deceive and defraud plaintiff, Cora G. Beers, and said agency."

That after the signing of the agreement, the defendants by artifice obtained possession of the key to the office, and immediately after obtaining the key to the office and the combination to the safe, the defendants informed the plaintiff that they did not want him in the office, that his authority as an agent was at an end; that he was not to touch anything in the office; that he was to collect no bills; and that he was to have nothing to do with the policies. The defendants then ordered the plaintiff to leave the office and compelled him to do so and placed a watchman on guard and took exclusive possession thereof; that on October 26, 1932, the property and business described in the contract was sold without any opportunity on the part of the plaintiff to redeem; that the defendants have not accounted to the plaintiff for the proceeds of said sale, and have filed no account thereof as required by sec. 241.15, Stats.

Plaintiff further alleges that no actual consideration for the contract passed between the parties thereto.

Plaintiff demands judgment against the defendants in the sum of $150,000 together with his costs and disbursements.

The contract referred to as Exhibit A, after the names of the parties, recites that the parties of the first part "have now defaulted and have not paid and remitted to said insurance companies the premiums collected for business written more than sixty days prior to the execution of this agreement; and are further indebted for business written during the months of August and September, 1932, and are unable to

pay and discharge the liabilities now due and owing to said hereinbefore mentioned insurance companies."

The contract then provides that, in consideration of one dollar and other good and valuable considerations, the first parties have set over unto the trustee defendants all of the business, equipment, etc., including the good-will and right to solicit at expiration, "with the absolute right and privilege given to the parties of the second part, at any.time in their discretion, to sell, transfer, convey, or make other disposition to whomsoever they may desire of the assets hereby conveyed to them."

It is next agreed that if the parties of the first part shall pay the amount due and owing to the defendant insurance companies that—

"if the parties of the second part at such time shall not have made a sale, conveyance, or disposition of the assets or business of the said C. P. Beers or Rock County Insurance Agency, being the insurance business of the parties of the first part, that the parties of the second part will then reconvey, surrender, and deliver the said business and the title to the physical and other assets thereof to the said parties of the first part; but that at any time until such back balances and indebtednesses shall have been paid by the parties of the first part, and the current balances placed on a sixty-day basis, that this sale shall be considered as absolute, and the parties of the second part shall have the unqualified right to sell the business and property herein conveyed to them at either public or private sale, whichever may, in their opinion, be advantageous, and the title conveyed to the purchaser thereof by them shall be absolute, and the parties of the first part shall have no further right or interest therein or thereto."

The proceeds of the sale were to be applied upon the indebtedness of the parties of the first part. The contract then provides for the employment of C. P. Beers at a salary of $150 a month, "which arrangement shall continue until such

a time as the parties of the second part may determine, and which, at their discretion, may be terminated forthwith and without notice."

The contract then provides for the making of deposits daily, a trustee account to be opened in a bank. There are other provisions relating to the manner of conducting the business not material here.

The principal contention made here by the plaintiff is that he has sustained damages in reliance upon the promissory misrepresentations made by the defendants. It is a well-established rule of law that fraud must relate to a present or pre-existing fact, and it cannot ordinarily be predicated on unfulfilled promises or statements made .as to future events. *Tufts v. Weinfeld,* 88 Wis. 647, 60 N. W. 992; *First Nat. Bank v. Hizer,* 189 Wis. 359, 207 N. W. 688. See also authorities cited in 51 A. L. R. 49, note 7; 3 Callaghan's Wis. Dig. Action for Fraud, p. 2557, § 10.

To this general rule there are in most jurisdictions well-recognized exceptions. One of these is that a buyer, who promises future payment for goods, being insolvent and having no intention to pay, is guilty of a fraud which warrants rescission. While there is a division of opinion, the weight of authority sustains a broader rule to the effect that fraud may be predicated upon a promise made with a present intention not to perform the same. This is adverted to in *Jeleniewski v. Eck,* 175 Wis. 497, 185 N. W. 540, but the decision in that case was rested upon other grounds. See also *Legler v. Tyler,* 184 Wis. 238, 199 N. W. 149. The logic of the cases in Wisconsin leads to the conclusion that in this state we have adhered to the minority rather than the majority rule. Whether or not that rule should be re-examined and modified or affirmed, it is not necessary for us to determine in this case. In this case the promissory misrepresentations relate to the identical subject-matter dealt

with in the promissory provisions of the contract. By the contract it is provided:

(1) Beers sells the entire insurance business and equipment to trustees with absolute right at any time in their discretion to dispose of same.

(2) Trustees agree to reconvey the business and equipment if Beers pays up before sale is made, but at any time until payment "this sale shall be considered as absolute and that the parties of the second part shall have the unqualified right to sell the business."

(3) That Beers to time of the sale shall devote his full time to the business of the Agency at $150 per month, "which arrangement shall continue until such a time as the parties of the second part may determine, and which, at their discretion, may be terminated forthwith and without notice."

The first false promissory representation is as follows:

"That plaintiff should continue in possession of the business and property and should conduct it the same as before, the only change being as to the custody of the moneys collected and the disposition of the same; and that as thus arranged, the business should be conducted until all unpaid accounts were paid, at which time the trusteeship should cease,"—

which arrangement should continue for whatever time it would be necessary for plaintiff to carry on the business and to pay off back balances.

The second false promissory representation is as follows:

"That the defendants had no desire or intention of interfering with plaintiff and his associates in the possession, control, and management of said business; that they should continue in the possession, control, and management of the same, but the money taken in should be turned over to the trustees, who would turn over to the plaintiff $150 per month and other expenses of the business, and the remainder of the income would be applied on the unpaid balances until

the same would be extinguished, whereupon the trust agreement should cease."

The third false promissory representation is as follows:

"That while the agreement contained a power of sale, that power would never be exercised as long as plaintiff was faithful in his care of, and attention to said business, nor would defendants in any way attempt to oust plaintiff and his associates from the possession, control, and management of said business, or interfere therein except as to disposition of the income thereof."

While there are other allegations of false representations, they seem to be mere makeweights and intended to fill in the picture. The promissory misrepresentations being by the allegations of the complaint made prior to and contemporaneously with the making of the contract, the plaintiff meets the well-established rule that, when a written contract has been entered into, the parties thereto cannot show an inconsistent contemporaneous oral agreement, the subject-matter of which is covered by the contract. This rule is so fundamental and well established that it seems unnecessary to cite authorities. Authorities if desired can be found in 56 A. L. R. page 6, reference 12, where the cases are cited including the Wisconsin cases.

This rule of law like many other rules is more easily stated than applied. Because of this difficulty, certain tests have been devised to determine when a written contract is in fact an integration of the agreement made between the parties: First, the writing may on its face be obviously incomplete, in which case evidence of a contemporaneous parol agreement not inconsistent with the writing may be shown; second, the writing may on its face as applied to the subject-matter appear to be certain and complete, and yet it may not as a matter of fact express the entire agreement or agreements of the parties, in which event parol or extraneous evi-

dence may be admitted to show this fact. These tests are stated and amplified and the cases cited and analyzed in 70 A. L. R. at page 770.

An examination of the promises contained in the contract and the promissory misrepresentations alleged in the complaint clearly disclose that they cover the identical subject-matter and are inconsistent; that is, the promissory misrepresentations promise a performance different from that contracted for. Therefore, in an action at law, they are not susceptible of proof and have no legal existence, being as a matter of law merged in the written contract. The harshness with which this rule may operate when applied in actions at law has led to the exercise of equity jurisdiction to relieve from such situations and so in actions to reform the contract, in order to express the true intention of the parties as well as in actions to rescind a contract either in law or in equity, such evidence within established limitations may be received.

The plaintiff here brings himself within none of these rules. He does not disaffirm the contract. This action being for fraud and deceit, affirms it. He neither seeks reformation nor rescission. This is not to indicate whether or not under the facts such a right existed, but merely to disclose the position which the plaintiff by his pleading has taken.

The plaintiff is then obliged to take the position that a contemporary oral promise may be shown, the defendants having no intent to perform it when made as a basis of fraud, even though it is consistent with the terms of the contract. This position strikes at the very vitals of the parol-evidence rule, and it would permit a claim of fraud in every case where there was a breach of contract, if it could be shown that at the time negotiations were had the defaulting party had no intention to perform. What the measure of damages would be in such a situation, or what would become of the contract which had been in fact knowingly

and intentionally entered into, present interesting questions which we pass by. It has been affirmed over and over again that secret intentions of the parties to a contract are wholly immaterial. It is not what the parties secretly intended, but it is what they manifested to each other by words or conduct that determines their rights. In the Restatement of the Law of Contracts, sec. 19, one of the essentials for the formation of a contract is:

"(b) A manifestation of assent by the parties who form the contract to the terms thereof, and by every promisor to the consideration for his promise, except as otherwise stated in sections 85–94;" which have no application in this connection.

By sec. 20 it is said:

"A manifestation of mutual assent by the parties to an informal contract is essential to its formation and the acts by which such assent is manifested must be done with the intent to do those acts; but . . . neither mental assent to the promises in the contract nor real or apparent intent that the promises shall be legally binding is essential."

Without entering upon a discussion of the so-called objective theory of contracts, it is sufficient to say that it is what the parties manifest to each other that controls and not an undisclosed secret intent. A party to a written contract, which he does not seek to avoid, may not show a contemporaneous parol promise relating to a matter covered by the contract, whether the promisor intended at the time to breach the contract or not. It would be a contradiction in terms to say that an oral promise made in the course of negotiations without intent to perform it, which promise is embodied in the contract, may be proven as a basis of fraud although there is no attempt to reform or rescind the contract. It may be true that where the making of the contract is part of a fraudulent scheme, the party charged having no intention to perform or be bound by the contract, the parol-evidence

rule has no application. The facts alleged in this complaint do not bring this case within that doctrine. Here the plaintiff by the form of his action affirms the contract and seeks recovery on the ground that a contemporaneous oral promise relating to a matter covered by the contract was fraudulent because made without intent to perform.

In jurisdictions where the doctrine of promissory representation obtains, with the single exception of the state of Pennsylvania (see 5 Wigmore, Evidence, p. 309, § 2431), the promise must relate to a matter not covered by the contract but to some collateral matter. Many cases are collected and analyzed in 51 A. L. R., beginning at page 46. Two examples will suffice to illustrate the rule.

*Laing v. McKee*, 13 Mich. 124, is said by the supreme court of Michigan to have initiated the rule in that state, the opinion being by that distinguished jurist, THOMAS M. COOLEY. The facts in that case were that the owner of property had offered to purchase a tax certificate from the owner of the certificate. The owner of the certificate promised that he would send the assignment and accept the amount of the certificate with twenty-five per cent interest. The owner of the certificate delayed performance until the time for redemption from the tax sale had expired. This was held to constitute a fraud and to entitle the owner of the property to relief.

In *Deyo v. Hudson*, 225 N. Y. 602, 122 N. E. 635, it was held that where an alleged agent had with fraudulent purpose promised to notify the plaintiff if one Carter should resume trading with the defendants, having at the time no present intention to perform the promise, and plaintiffs relied and acted thereon, an action could be maintained for the resulting injury.

While there are cases in this court, see *Danielson v. Bank of Scandinavia*, 201 Wis. 392, 230 N. W. 83, where the enforcement of contemporary parol agreements has been

awarded, this court has as yet not definitely considered to what extent, if at all, it will change the present rule with respect to promissory misrepresentations as a basis of fraud.

It might well be said in this case, so far as a cause of action for deceit is concerned, that the plaintiff had no right, under the circumstances of this case, to rely upon an oral promise, the effect of which was to destroy the legal effect of the contract into which he thereafter knowingly entered. We conclude therefore that the complaint states no cause of action for fraud and deceit.

It is necessary for us to consider, however, whether or not any other cause of action is stated. *Olson v. Skroch,* 182 Wis. 448, 196 N. W. 767. By the contract the defendants agreed to employ the plaintiff for an indefinite period of time, but reserved the right to continue the employment "until such a time as the parties of the second part may determine and which at their discretion may be terminated forthwith and without notice."

"At their discretion" implies that the promisors will act in the premises upon a sound judgment. It excludes an arbitrary, unreasonable, or oppressive act. *Stewart v. Stewart,* 28 Ind. App. 378, 62 N. E. 1023.

If the contract had read, "shall continue until such a time as the parties of the second part may determine and may be terminated at will forthwith and without notice," a different situation would exist. In this case the defendants never took the plaintiff into their employ except perhaps in a very technical sense. They did not give him an opportunity to perform services under the contract. Under the facts alleged in the complaint, when they had secured the title to the property, possession of the office, and combination of the safe, they unceremoniously evicted the plaintiff. The act cannot be justified as a discretionary one because no facts arose after the making of the contract upon which the discretion of the defendants could be exercised. The refusal of

the defendants to go on with the contract amounted to a breach. It must be held that the complaint states a cause of action in contract. The demurrer was therefore improperly sustained.

*By the Court.*—The order appealed from is reversed, and cause remanded for further proceedings according to law.

FAIRCHILD, J. (*concurring*). I differ with the majority as to the grounds on which the decision should be based. I agree that the demurrer should be overruled, but because the facts alleged show a cause of action for fraud practiced upon plaintiff and his assignors, and not because of breach of contract.

Statements by a party, in negotiating a contract, of matters within its scope but omitted from it, are ordinarily no part of the agreement, and proof of such negotiations as being a part of the contract is usually prohibited under the parol-evidence rule. *Derbeck v. Albright,* 186 Wis. 515, 203 N. W. 337. This rule forbids any addition to or contradiction of the terms of a written instrument by testimony purporting to show that, at or before the signing of the document, further or different terms were orally agreed upon, the written instrument appearing on its face to express a complete agreement. In other words, "parol contemporaneous evidence is inadmissible to contradict or vary the terms of a valid written instrument." 3 Jones, Evidence (2d ed.), p. 2696, § 1483; 1 Greenleaf, Evidence (16th ed.), p. 405, § 275. But conditions are created at times to which the parol-evidence rule does not apply. *Lepley v. Andersen,* 142 Wis. 668, 125 N. W. 433.

A promise made without intention of performance, for the purpose of inducing another to enter into the contract, is a fraudulent representation which creates a condition to which the parol-evidence rule is inapplicable. The existence then of a contract is not in controversy, but the existence and the use of a false representation as an inducing cause is.

The parol-evidence rule is designed to give certainty to a transaction which has been reduced to writing and it is reasonable to forbid additions or contradictions. However, when it appears from a state of facts that a false representation has been made, and a contract has been employed to conceal unethical conduct and as a means to perpetrate fraud, then, as is manifest, a situation exists to which the parol-evidence rule does not apply. It is such a situation which the complaint describes in this case.

It seems clear that the situation here is one upon which the parol-evidence rule has no bearing. That rule, as I have said, is intended for the sole purpose of preventing persons who have become parties to definite, complete, and unambiguous written contracts from being heard to say later that the actual contract was different from that expressed in the writing. In a case such as the present one, where a party seeks damages for fraud, no attempt is made by the defrauded party to change the terms of the written agreement. He admits he made the contract and admits the terms thereof. What he does do is to attempt to show that he was induced by fraud to enter into this contract, and consequently, if the contract is still executory, should not be compelled to perform it (*Lepley v. Andersen, supra*), or, if the contract is already executed by the defrauded party, as in the present case, should be repaid for the damages he has suffered. In such a case, the reason for the parol-evidence rule not being present, the rule itself is not brought into action.

Without denying that the parol-evidence rule could be invoked in the present case to prevent appellant from attempting to modify the terms of the written contract, I disagree with the majority holding that that rule precludes the appellant from introducing the oral agreement as evidence to support his action for fraud based on his contention that he was induced by respondents' misrepresentations to enter into the written contract. The subsequent reduction of the contract to writing may have bearing on the question of appel-

lant's right to rely on respondents' oral statements, but it should not preclude appellant, in an action for fraud, from showing that such statements were in fact made.

As the only question to be determined is whether all the necessary elements of actionable fraud are present, the initial inquiry under the facts admitted by the demurrer is addressed to the question as to whether the alleged fraudulent statements do constitute fraud. As stated in the majority opinion, the authorities show two lines of decisions, a majority and a minority rule. The majority of the cases hold that promises made without intention of performance may constitute the basis of an action for fraud. In the decisions of this state there is one case, *Tufts v. Weinfeld*, 88 Wis. 647, 60 N. W. 992, which has accepted and followed the minority rule. While subsequent cases, with the exception of *Jeleniewski v. Eck*, 175 Wis. 497, 185 N. W. 540, do seem to approve of the doctrine of the minority rule as expressed in that case, a study of the facts of each case shows them not strictly analogous to the *Tufts Case*, and I doubt the propriety of following the minority rule.

The case of *Tufts v. Weinfeld, supra,* was an action in contract by the promisor for defendant's failure to buy a soda-fountain as agreed, and the promisee's defense was that the contract had been induced by plaintiff's promise not to sell to any one else on the same street, that plaintiff intended to break this promise and did break it. The trial court allowed plaintiff only nominal damages since defendant had rescinded promptly before plaintiff had been put to any expense under the contract or changed his position. Plaintiff appealed. This court upheld the trial court's holding that defendant's answer was no defense, although it reversed the decision because of error in assessing damages, and said:

"Such alleged false representations did not relate to any existing fact *in præsenti,* but only to future sales. Such

false promise was no ground for avoiding the written contract. It is entirely unlike a case where a merchant orders goods, knowing himself to be insolvent, without disclosing his insolvency, with the preconceived purpose of not paying for them at all, as in *Lee v. Simmons,* 65 Wis. 523, 27 N. W. 174, relied upon by counsel. In such case the existing fact of known insolvency is the important factor."

I am of the opinion that the court erred in making the insolvency rather than the intent not to pay the determining factor on which fraud was based in *Lee v. Simmons.* Nondisclosure of insolvency in itself cannot constitute fraud, whereas intent not to pay can. *Nichols v. Pinner,* 18 N. Y. 295. That this is the true interpretation of *Lee v. Simmons* is clearly shown in *Hart v. Moulton,* 104 Wis. 349, 358, 80 N. W. 599, and *Leedom v. Mayer,* 114 Wis. 267, 90 N. W. 169. Taking such a view, the situation described in the *Tufts Case* is fundamentally the same as that in the *Lee Case,* and the court might well have followed that case instead of trying to distinguish it.

The *Tufts Case* has been variously approved, distinguished, and questioned in subsequent Wisconsin cases. In *Horton v. Lee,* 106 Wis. 439, 82 N. W. 360, the court found under the circumstances that an opinion as to value of distant lands was actionable fraud. Without quoting the *Tufts Case* they said in *dicta:*

"A mere opinion as to the value of property . . . will not void the sale . . . on the ground of fraud. . . . Neither will a false representation as to future matters, or a promise to do some act in the future which the promisor does not intend to perform. *Patterson v. Wright,* 64 Wis. 289, 25 N. W. 10."

The *Patterson Case,* referred to in the *Horton Case,* went no further than to hold that a mere promise to pay and failure to do so does not constitute fraud. There was no evidence there of intent not to pay.

In *Pratt v. Darling,* 125 Wis. 93, 103 N. W. 229, the plaintiff had misrepresented an existing fact as well as a future promise. The court said in *dicta,* citing the *Tufts Case:*

"Had Killen's statement been simply to the effect that he would not sell the goods to any other dealer it would not have constituted a fraudulent representation, . . . because this would have been a mere promise and not a false statement as to an existing fact."

In *James Music Co. v. Bridge,* 134 Wis. 510, 114 N. W. 1108, the court said:

"Nor can there be any recovery of damages against the plaintiff, for the reason that the court has found upon sufficient evidence that it was entirely free from fraud. . . . The alleged representation made by Peckham that he proposed to continue the business at the old stand was simply a statement of future intention and not of an existing fact, and, while it might be reprehensible if untrue, it affords no basis for rescission. *Tufts v. Weinfeld, supra.* Furthermore, in the present case there is no evidence that this promise or representation was relied on by the defendants or served as an inducement to consummate the trade."

In *Jones v. Brandt,* 173 Wis. 539, 181 N. W. 813, the court said:

"It is urged by appellants' counsel that the representations were not actionable because they related solely to future events or were mere expressions of opinion. . . . While it is true that mere promises are not a basis for fraud, and that ordinarily fraud cannot be predicated on mere expressions of opinion, yet it is well settled that statements taking the form of expressions of opinion may under some circumstances be treated as statements of facts. [Citing cases.] . . . In *J. H. Clark Co. v. Rice,* 127 Wis. 451, 465, 106 N. W. 231, . . . the court said: '. . . The mere fact that a statement takes the form of an expression of opinion, however, is not always conclusive. Whenever there is any doubt as to whether it is

made as a mere expression of opinion or as a statement of fact, the question must be determined by the jury or court.' "

In *Jeleniewski v. Eck, supra,* the decision was based on the theory of breach of contract; but with reference to actionable fraud the court said:

"Although it is elementary that mere broken promises do not constitute actionable fraud, it is not so clear that an action for fraud may not be predicated upon a false statement of present intent, which is material, made with intent to deceive, and relied on by the other party. There is much authority for the view that a condition of mind is as much a fact as a condition of the body, although more difficult to prove; and that therefore a misstatement of a man's mind is a misstatement of fact. In the present case the promise was coupled by the proof with present intent to break it. The cases supporting the contention that such representations are actionable will be found collected in 12 R. C. L. (Fraud and Deceit), § 28. There is also authority for the contrary view in 12 R. C. L. p. 262, § 29, and the case of *Tufts v. Weinfeld, supra,* tends to support the view of the trial court, although the subject was not discussed in the opinion of the court.

"But we have come to the conclusion that the present case should be decided on another ground."

In *Gauthier v. Atchison, T. & S. F. R. Co.* 176 Wis. 245, 186 N. W. 619, the court said:

"We feel compelled to construe the allegations as those relating to future events and not existing facts, and therefore not actionable. Mere promises to pay a debt in the future, although broken, are not fraudulent, although they may be so labeled in the complaint. It is axiomatic that, in drawing a complaint charging fraud, the pleader must state facts constituting the fraud alleged, so that the court may form its own opinion as to its sufficiency.

"Plaintiff's counsel argue that the former strict rule has been so relaxed that false representations as to value and opinions may constitute fraud, citing *Miranovitz v. Gee,* 163

Wis. 246, 157 N. W. 790, and *Ohrmundt v. Spiegelhoff,* 175 Wis. 214, 184 N. W. 692. But an examination of these cases will show the peculiar circumstances under which statements of opinion as to value were held actionable and they fall far short of asserting that mere promises to perform acts in the future, although broken, may constitute fraud. Many decisions of this court declare the contrary rule. *Sheldon v. Davidson,* 85 Wis. 138, 55 N. W. 161; *Morrison v. Koch,* 32 Wis. 254; *Patterson v. Wright, supra; James Music Co. v. Bridge, supra; Horton v. Lee, supra; Tufts v. Weinfeld, supra.*"

In *Legler v. Tyler,* 184 Wis. 238, 199 N. W. 149, the court said:

"That defendants would obtain in the future a purchaser of the property acquired by plaintiff in the exchange was not an assertion upon which plaintiff can predicate an action for fraud. *Miley v. Heaney,* 168 Wis. 58, 73, 169 N. W. 64; *Davis v. Reynolds,* 107 Me. 61, 77 Atl. 409; *Hazlett v. Wilkin,* 42 Okla. 20, 140 Pac. 410."

It must be noted that in the last two cases quoted there was no evidence showing intent not to perform on the promisor's part, at the time he made the promise. That the necessity existed of showing such intent, and not merely of alleging it, was brought out in the *Gauthier Case.*

Summarizing the cases referred to, we find authority to the effect that statements of opinion and undisclosed intention not to pay for goods purchased may constitute fraud. The *Tufts Case* is probably the only one which definitely lays down the rule there stated, where the facts are at all analogous to those in the present case, and was based on a misapprehension of the significance of the *Lee Case.* All the cases subsequent to the *Tufts Case* which refer to it and apparently support it are cases in which the language is *dicta* or in which some essential prerequisite to an action for fraud is absent, so that these cases do not require the acceptance of

the rule of the *Tufts Case,* as applied to circumstances such as we have in the present case. In the *Jeleniewski Case* the rule of the *Tufts Case* is definitely questioned. In view of the doubts cast upon the *Tufts Case,* the fact that it stands unsupported by subsequent Wisconsin decisions as far as application to facts similar to those in the instant case is concerned, the fact that it is contrary to the great weight of authority in the United States, the fact that it cannot be reconciled with the cases, where fraud was found, involving intention not to pay and statements of opinion on which the other party had a right to rely, and as a matter of reason and justice, I believe that the case should be overruled.

With reference to the question of promises made without intention of performance, it is said in 51 A. L. R. page 63:

"According to the weight of authority, if the person making the promise or statement as to a future event is guilty of an actual fraudulent intent, and makes the promise or misrepresentation with the intention of deceiving and defrauding the other party, and accomplishes this result, to the latter's injury, fraud may, under many circumstances, be predicated thereon, notwithstanding the future nature of the representations. This result is reached frequently on the theory that a person's intention or belief is a matter of fact, and that, therefore, if a misrepresentation is made with regard to the same, the misrepresentation is one of fact. But the particular circumstances determine largely the result in this class of cases. This seems to be true, partly at least, for the reason that the questions whether a representation should be regarded as a mere expression of opinion, and whether one to whom it is made ordinarily does and has a right to rely thereon, depend on the nature of the representation and the relation of the parties."

Respondents are charged with having made statements to a debtor, whom they were seeking to persuade into giving security for a debt, that they planned to leave the business in the control of the debtor, when, as a matter of fact, they had

no such plan and then intended to refuse to make good their assurance. This I hold amounts to fraud and deceit. *Hart v. Moulton, supra; Leedom v. Mayer, supra; Keeler v. Fred T. Ley & Co.* 65 Fed. (2d) 499; 51 A. L. R. 46, and cases cited. While the representation may possess many characteristics of a promise of something to be done in the future, it is more substantial than that, and constitutes the basis of an actionable false representation. To constitute actionable fraud there must be, in regard to some existing matter, a false assertion by which a party is induced to part with his property. Inherent in an intent is the act prompted by it, and a formed intent "in jurisprudence, whatever may be said of it in metaphysics, is as much a fact as is a physical act performed." *First Nat. Bank v. Swan,* 3 Wyo. 356, 23 Pac. 743; *Hart v. Moulton, supra; Leedom v. Mayer, supra; Jeleniewski v. Eck, supra; McCready v. Phillips,* 56 Neb. 446, 76 N. W. 885; *Cerny v. Paxton & Gallagher Co.* 78 Neb. 134, 110 N. W. 882, 10 L. R. A. (N. S.) 640.

In the last-named case the complaint arose because a creditor of the plaintiff, who conducted a general merchandise business, induced the plaintiff to give him a mortgage by agreeing that if, upon foreclosure sale, the property should not bring at least $3,800, the defendant himself would bid it in, and, if that happened, would place plaintiff in charge of it as defendant's agent, continue to conduct the business and apply the proceeds therefrom upon the mortgage until it was paid, at which time the defendant would reconvey the property to the plaintiff. Plaintiff, relying on these representations, executed the mortgage. Defendant, instead of buying the property as agreed, allowed it to be purchased at the foreclosure sale by outside parties for $2,555. Plaintiff, alleging that the defendant had no intention of performing at the time this agreement was entered into, but made such representations for the sole purpose of inducing plaintiff to

part with his property, sued to recover damages for fraud. Upon challenge to the complaint in that case on the ground that fraud could not be predicated on a promise not ·performed, the court said:

"In *Dowd v. Tucker*, 41 Conn. 197, the third headnote states this proposition: 'The procuring of property upon a promise which the party at the time does not intend to perform is a fraud. And it makes no difference whether the property is real or personal.' In *Goodwin v. Horne*, 60 N. H. 485, the rule is thus stated: 'Ordinarily, false promises are not fraudulent, nor evidence of fraud, and only false representations of past or existing facts are actionable. . . . But when a promise is made with no intention of performance, and for the very purpose of accomplishing a fraud, it is a most apt and effectual means to that end, and the victim has a remedy by action or defense.' The holding of this court in *Pollard v. McKenney*, 69 Neb. 742, 96 N. W. 679, 101 N. W. 9, is to the same effect. The false promise, therefore, charged to the defendant, coupled with the charge that it was fraudulently made without any intention to perform it, but to induce the plaintiffs to part with their property, constitutes actionable fraud."

The same result occurs when a contractual promise is made by one then intending not to perform, although the fraudulent promise made verbally is also contained in the contract; that is, the writing of the false representation into the contract does not necessarily deprive the wronged party of his action for deceit and leave him only with an action for breach of contract. *Ganley Bros. v. Butler Bros. Bldg. Co.* 170 Minn. 373, 212 N. W. 602; *Peterson v. Landahl,* 86 Minn. 32, 89 N. W. 1131; 56 A. L. R. 13, 83. The rule is thus stated in 3 Williston, Contracts, p. 2709, § 1523:

"Although relief may be obtained by a defrauded party to a contract in a variety of ways, such relief is always based on one of three general remedies which are open to the defrauded party: (1) A right to damages for being led into

the transaction. Under this form of relief the injured party does not seek to undo the fraudulent transaction but claims sufficient compensation to make his position as good as it would have been had he not entered into the transaction at all. . . ."

The complaint before us charges the defendants with having induced the appellant to part with his property in reliance upon the representation of the respondents that the plans for collecting the money due respondents included the opportunity for the appellant to continue his connection with the business and to redeem it, when as a matter of fact respondents then intended to refuse to keep the promise.

When most of the cases denying recovery in suits for fraud based on non-performance of promises to do something in the future are carefully analyzed, it will usually be found that there is no evidence that the party making the promise intended not to perform it, that he made the statements with no intention that the promisee rely on them, that the promisee did not in fact rely on them, or that if he did he should not reasonably have done so to the extent of being induced to enter into the contract. In other words, one or more of the necessary elements of actionable fraud are missing. If, however, all of these necessary elements are in fact present, there would seem to be no good reason why the plaintiff should be denied recovery.

In the present case the necessity of determining defendant's intention in the matter is obviated by the fact of his demurrer. The only questions, therefore, are whether plaintiff did rely, and whether he was entitled to rely, on defendant's promises. This may be particularly close here because of the written contract entered into subsequent to the making of the oral promise. The significance of this written agreement, as explained above in the discussion of parol evidence, does not lie in the question of whether or not the

parol-evidence rule is applicable. Rather it is important as evidence in favor of defendant that plaintiff did not in fact rely on the oral promise. The writing should, and does, have the effect of necessitating that the plaintiff introduce evidence to show that he did in fact rely on the oral promise. But it should not be said that the written agreement constitutes conclusive and irrebuttable evidence of non-reliance so as to justify a verdict for defendant as a matter of law.

Even if it be shown that plaintiff did rely on the oral promise, the question still remains whether, acting as a reasonable man, he should have so relied. One is not entitled to shut his eyes to obvious facts, go blindly, unthinkingly, and unreasonably into a transaction and then be heard to say later that, instead of relying on the natural powers of reason, prudence, and caution with which he was endowed, he chose to put a credulous and unjustified faith in the word of the opposite party. If the transaction here had been between two strangers, or between parties who had had no previous business relations with each other, the trial court's decision would very probably be justified. But here was a situation where the parties had had business dealings for many years, and their transactions had always been characterized by friendly relations and fair dealing on both sides, so that it was entirely reasonable for plaintiff to presume that such fairness would continue, a presumption that is enforced by defendant's definite reassurance at the one moment when plaintiff did show hesitation. It is alleged that the relation between the two was such that the plaintiff was accustomed to look up to the defendants and to follow their advice and suggestions in the conduct of his business. This is nowhere more clearly indicated than in the dealings between them which led up to this very contract.

A situation somewhat similar in principle to that in the present case existed in *Arnold v. National A. & C. Co.* 20

Fed. (2d) 364 (C. C. A. 2d). There, in an action in contract the defense of fraud, arising out of misrepresentations made by plaintiff prior to the reduction of the agreement to writing, and which defendant alleged induced him to enter into the written contract, was made by defendant. The written contract contained this stipulation:

"It is understood and agreed that this memorandum contains all the terms of the sale herein involved, and that there is no warranty, express or implied, incident to the sale, or other conditions not herein specifically stipulated."

The trial court held that the parol-evidence rule precluded the admission of evidence of the prior representation. On appeal the judgment was reversed, the court saying:

". . . If the promisor has agreed to nothing not covered by the instrument the vendee can have no remedy under the contract merely because some prior representations were wrong. If, however, it can prove that the vendor has knowingly deceived it, that the deceit was an inducement to the contract, and that it relied upon it to its damage, the situation is quite different.

"The parol-evidence rule has nothing to do with such a case. . . . Professor Wigmore's explanation of the inapplicability of the parol-evidence rule is that 'it is impossible to suppose that the subject of fraud was intended . . . to be covered, since by hypothesis the party upon whom the fraud is practiced does not know of it and therefore could not have had such an intent.' 4 Wigmore, Evidence (2d ed.), § 2439.

"Whether this is the explanation, or perhaps the more simple one, that the law will not allow a man to profit by his own wrong, is unnecessary to determine; but it seems clear that such clauses as are contained in the contract under consideration do not preclude a defense of fraud. . . ."

A distinction should be noted here between the present case and one where the provision in the written contract is so directly in conflict with the oral promise as to put plaintiff on his guard. I agree with the majority that generally in

such a case relief should be denied. I believe, however, that such denial should be based on the fact that the party did not rely upon the oral statement, or if he did, that he was entirely unwarranted in doing so, and not on an invocation of the parol-evidence rule.

The instant case involves a different situation. The oral promise and the written stipulation are perfectly reconcilable with each other. The written stipulation was a reasonable one to make in a contract in which the personal relationship of the parties was of great importance, and the plaintiff recognized it as such. Defendants themselves emphasized this by stating that it was customary to include such a clause in all their contracts, and in their conversation with plaintiff they minimized the "terminable" effect of it. What plaintiff did not perceive was that a stipulation which is of common occurrence in a contract of this sort might be made the instrument whereby the defendant could with impunity induce the plaintiff to act to his own detriment and to the defendant's advantage, by making promises which defendant never intended to keep. Perhaps he was unreasonable, in his dealing with parties in whom the allegations show he placed faith, not to realize that it might be used against his interests. But this question cannot be determined as a matter of law.

It is not necessary to find a fiduciary relation between the parties. The question here is one of reasonableness, not one of the legal status of fiduciary relationship. Perhaps plaintiff did not exercise the highest degree of prudence and caution. The law does not require that he should. It only requires that he act reasonably. And to say that the plaintiff, lulled into a less acute suspicion of those with whom he was dealing and induced to descend somewhat from an extremely high standard of caution, by his experience of many years of fair and equitable treatment at the hands of the

defendants, acted unreasonably as a matter of law, is to disregard entirely the established and well-recognized principles of fair-dealing and trustworthiness that mark the transactions of society, and are as basically essential to its business intercourse as the enforceability of contract itself.

It might be argued that to hold as I hold would render all contracts uncertain. The barriers which the plaintiff must hurdle before he can recover—in other words, the necessity of proving defendant's intention, his own reliance, and the reasonableness of such reliance—effectively preclude any such danger. Such an argument carries no weight in the cases involving fraudulent misrepresentation of an *existing* fact, nor should it in this case. But even if there were such danger, its ill-effects would be small compared with those resulting from the opposite holding, under which it would be possible for unscrupulous persons, by taking advantage of the normal and reasonable faith of mankind, by the use of unfair and misleading practices and fraudulent promises, and by the use of unobtrusive, illusory, and indefinite written stipulations, to make a practice of driving hard, unjust, and sharp bargains, acting fraudulently in every sense of the word except the restricted technical and legal sense that the court had adopted, and then be able to look to the courts for the protection of his ill-gotten gains to the detriment of the person he had defrauded.

*Cerny v. Paxton & Gallagher Co., supra,* was based on a chattel mortgage which the debtor was induced to sign by the representation that he would be given a certain amount of protection in the way of an opportunity to redeem his business. In the case at bar the same promise was made and is not excluded from consideration simply because the representation appeared in the instrument signed by the parties. 51 A. L. R. 46, and cases cited. The provision to terminate the employment by respondents is not so incon-

sistent with the promise of employment as to have caused the plaintiff to suspect that the promise of employment and of compensation of $150 per month were meaningless and idle phrases so far as Beers was concerned. The Agency was indebted to the insurance companies, but it did not have to enter into this agreement.

A cause of action for damages resulting from deceit seems to me to exist and a complaint therefor is good when the fact appears that a promise of employment and continuing management of the business was made to induce a debtor to transfer his business to his creditor, under an arrangement by which the debtor is promised that he will have an opportunity to pay his debt and save his business through employment in and management of it, when the creditor then intended to violate the promise. A contractual promise made with the undisclosed intention of not performing it is a fraud. . Restatement of the Law of Contracts, p. 900, sec. 473.

I am not considering the mutuality or lack of it in the clauses under discussion, but whether the complaint shows that a promise to employ Beers and afford him an opportunity to redeem his business was made with intent on the part of the promisors not to give Beers the position, and whether the writing is so worded as to preclude him from a right to rely on the oral promises. The writing repeats the promises and plausibly presents reasons for Beers and his associates to hope for and expect its fulfilment. The words by which the trustees sought to retain the right to use their discretion in the matter of terminating the agreement, and on which they now rely to destroy appellant's cause of action based on the alleged false representations, fit too well into the arrangement to destroy the confidence created by the promise and reiterated in the contract in the words which precede those reservations. It is not only difficult, but impossible,

for me to find anything in the writing inconsistent with and of such effect as to destroy the promise or to bind appellant, in the absence of default on his part, to accept the result forced upon him as described in the complaint. He and his associates, under the pleadings, had a right to rely on the express statement of that promise, and for the purposes of this complaint it is the equivalent of an existing fact which was misrepresented to them. According to the complaint, the trustees' intention not to hire or permit him to carry on the business was known only to them, was unknown to him, and was the inducing cause of appellant's act in signing the instrument. This case, under the complaint, ought to stand as one where parties seeking relief entered into a compromise or gave security for indebtedness, induced thereto by fraudulent representations of a party seeking an advantage. 2 Cooley, Torts (3d ed.), 936. The complaint alleges the immediate exclusion of appellant from the premises as soon as the paper was signed and in the respondents' possession; the non-existence of the plan of employment represented as existing and relied upon by the appellant, and the fraudulent representations in relation to it of the respondents. It alleges the representation that Beers would be employed by respondents; the contract reasonably construed indicates the intention to employ him; that when the contractual promise of employment was made the promisors intended then not to perform, that they were using the promise to induce the appellant and his assignors to transfer the business to them.

The question of the amount and measure of damages is not before the court and requires no discussion at the present time. It is important to note, however, that circumstances may arise which will result in a material difference in the damages recovered, depending on whether the case is tried on the contract theory or the tort theory. Since this may prove to be one of those cases, the basis of the court's decision is as important as the decision itself.

As to the assignability of the cause of action, the general rules for determining this quality have long been associated with the idea of survivability. A cause of action which survives the death of the original owner passes to a successor. The cause of action passes into the possession of another. An assignment accomplishes nothing more. The reason for one must be based on the same legal theory as the other. This cause of action is one which survives and it is assignable. I think, therefore, that the second ground of the demurrer fails also. *Zartner v. Holzhauer,* 204 Wis. 18, 234 N. W. 508; *Tyson v. McGuineas,* 25 Wis. 656; *Webber v. Quaw,* 46 Wis. 118, 49 N. W. 830; *Lehmann v. Farwell,* 95 Wis. 185, 70 N. W. 170; *Samuel Meyers, Inc., v. Ogden Shoe Co.* 173 Wis. 317, 181 N. W. 306; *Milwaukee v. Boynton Cab Co.* 201 Wis. 581, 229 N. W. 28, 231 N. W. 597.

WICKHEM, J. (*concurring*). The opinion of the court holds that the complaint states a cause of action for breach of contract. With this view I concur for the reasons therein stated. A consideration of the question whether a cause of action in fraud is stated may well begin with an acceptance of the conclusion that a cause of action is stated for breach of contract. It may also fairly be stated that no cause of action is alleged for rescission, not because this relief is not demanded in the prayer, but because there is no allegation of facts showing a disaffirmance. In so far as fraud is relied upon as a basis for relief, it must be considered that the complaint proceeds upon an affirmance of the contract, and that the action was intended to be one at law for deceit. While the pleader's theory is, of course, immaterial upon a general demurrer, it must be concluded that the only cause of action which can be claimed to have been stated in fraud is one that would have been denominated an action in deceit before the adoption of the code.

In considering the problem presented by this case, I think two wholly separate questions arise, and that any subordinate questions involved naturally group themselves under these main questions.

The first question is whether, under any circumstances, a promise may be the basis for an action in fraud or deceit when it is coupled with a present intention never to perform the contract. The majority rule, and in my view the better rule, holds in such a situation that there is an implied misrepresentation of the state of mind of the promisor, and that this is sufficient to constitute fraud, which is generally by definition limited to the misrepresentation of a fact. Wisconsin is listed as holding to the minority view, and I favor abandoning this position.

The next question has to do with the relation of the parol-evidence rule to the subject of promissory fraud. In so far as this question relates to the present case, it may further be narrowed. In so far as a plaintiff seeks to predicate fraud upon an intention never to keep a contemporaneous oral promise, which formed a part of the negotiations between the parties, and which is inconsistent with the stipulations of the writing as ultimately integrated, it may well be that the parol-evidence rule operates to eliminate proof of this fraud on the ground that the promisee ought not to be permitted to rely upon an oral promise inconsistent with the written agreement, and that, however valid the doctrine that fraud may always be shown consistently with the parol-evidence rule, permission in such a situation to prove this type of fraud opens the door to a destruction of the parol-evidence rule. See note 56 A. L. R. 46. Certainly this contention would seem to have much force where the action for fraud is based upon an affirmance of the contract. It is certainly more arguable, if the contract has been disaffirmed or if there is a defense based upon the assumed invalidity of the

contract because of fraud, that the parol-evidence rule has no application, since the effect of the evidence is to destroy the contract from its beginning and not to contradict or modify any of its individual terms. As stated in Restatement of the Law of Contracts, § 238:

"Agreements prior to or contemporaneous with an integration are admissible in evidence

"(b) to prove facts rendering the agreement void or voidable for illegality, fraud, duress, mistake or insufficiency of consideration."

These comments doubtless apply also to cases where the matter concerning which there has been a promissory misrepresentation formed a part of the negotiations, but was not included in the contract. In other words, if the parties have executed a writing intended to integrate the subject of their negotiations, presumably all matters not included in the contract were not intended to have legal effect, and an attempt to show them would be as much a violation of the parol-evidence rule as would an attempt to contradict the terms of the contract.

The instant case presents neither of these situations. Assuming that promissory misrepresentations may in any case be the ground for fraud, does the fact that the oral promise is identical with the stipulation in the writing throw the case within the prohibitions of the parol-evidence rule? I do not think it does, and it is my conclusion that this is true whether the action be based upon an affirmance or disaffirmance of the contract. Here there is no attempt to vary, modify, or contradict the terms of the writing, nor is there any attempt to add to the contract by contemporaneous oral agreements. The charge is simply that a stipulation in the contract was made with the intent not to perform it. In this class of cases I see no relation between the parol-evidence rule and the question of promissory fraud. If fraud cannot exist

under these conditions, it must be because one who enters into a contract ought to be precluded from relying upon anything but the stipulations in the contract, upon some doctrine that any preliminary oral negotiations have been merged into the contract and have entirely lost their legal materiality. I think this is not true, and that it cannot be true if the doctrine of promissory misrepresentation is to have any force whatever. The jurisdictions recognizing false promises as fraud do so upon the ground that there is an implied misrepresentation as to the state of mind of the person making the promise. Whatever happens to the stipulation concerning which the intent is entertained, the misrepresentation is not merged with the contract nor does it lose its materiality by reason of the execution of the contract. 56 A. L. R. 26. If the parol-evidence rule precludes it from being shown, the result is reached for the purpose of vindicating a policy which has nothing to do with the efficacy of the false promise as a basis of fraud.

It is suggested in the opinion that this question is in some manner determined by the so-called objective theory of contracts. I fail to see how this doctrine has any materiality whatever. This rule exists for the purpose of ascertaining the intent of the parties. This court is in agreement as to the intent of the parties to the contract involved in the complaint, and has arrived at its conclusion by application of certain objective tests. Having ascertained this, the function of the objective theory is fully discharged, and we are presented simply with the question whether if defendant, as alleged in the complaint, entered into this contract with no intention ever to carry out its terms, an action in deceit will lie. In my judgment it should be held that it will, and I perceive no danger to the rules of contract in such a holding.

I accept without further discussion the conclusions of Mr. Justice FAIRCHILD to the effect that the misrepresentations

as set forth in the complaint are sufficiently broad to bring into operation and materiality the principles heretofore discussed. I concede that in most of the cases examined the promissory fraud has related to some collateral matter not intended to be integrated. However, I find no authority so limiting the rule, and a large body of cases involving an intent by a vendee at the time of sale not to pay for the subject-matter of the purchase, are consistent with the views I have expressed. See also *Traber v. Hicks*, 131 Mo. 180, 32 S. W. 1145; 9 Harvard Law Review, 424; 1 Bigelow, Fraud, p. 484. In sec. 473, Restatement of the Law of Contracts, it is said:

"A *contractual* promise made with the undisclosed intention of not performing it is fraud."

In illustration 2 under this section the following hypothetical case is given:

"A makes an offer to B, who accepts with the undisclosed intention of not performing. A's promise is voidable for B's fraud. Though A was not induced to promise by B's fraud, the purpose of B is to obtain subsequent performance by A."

These statements, of course, relate to such fraud as will render the contract voidable, but there is no evidence that the type of fraud necessary to maintain deceit is different from that which will warrant avoidance. In sec. 484, Restatement of the Law of Contracts, with reference to "loss of power of avoidance by affirming transaction," one of the illustrations of such affirmance is the bringing of an action of deceit.

A motion for a rehearing was denied, with $25 costs, on May 1, 1934.