KAR-LAC COMPANY, Appellant, vs. ARNOLD ELECTRIC COMPANY and others, Respondents.

*March 18—April 12, 1938.*

538

For the appellant there were briefs by *Alden, Latham & Young* of Chicago, Illinois, and *Beck, Smith & Heft* of Racine, and oral argument by *W. T. Alden*.

For the respondents there was a brief by *Fred Gerlach* of Chicago, Illinois, and *Hand & Quinn* of Racine, and oral argument by *Mr. Gerlach* and *Mr. E. B. Hand*.

ROSENBERRY, C. J.   The plaintiff is engaged in the business of manufacturing drink mixers and hot cups, and owned an invention for beverage mixers and heaters. Prior to March 10, 1930, the Arnold Electric Company manufactured and sold beverage mixers, and prior to March 10, 1930, the Arnold Electric Company proposed to the plaintiff to place upon the market a drink mixer suitable for use with the Kar-Lac cordless hot cup. On March 10, 1930, the plaintiff granted to the Arnold Electric Company the right under letters patent owned by it to manufacture a drink mixer modeled after the Kar-Lac drink mixer, to be known

as Model No. 18. The parties entered into an agreement and licensing contract, the details of which it is not necessary to state, and on the same day one William H. Shellman assigned to the Arnold Electric Company certain letters patent for an invention known as a food and beverage mixer.

On August 19, 1930, the plaintiff wrote Arnold Electric Company as follows:

"Confirming our Mr. Shafer's telephone conversation with your Mr. Blish the 15th, will state that if you start now to build your No. 18 mixer or any future model of mixer with facilities for our Cordless Hot Cup connecting means, as per our contract of March 10, 1930, we will make no arrangements with any other mixer manufacturer (as provided for in said contract) to supply cup connecting means for such other mixer before August 1, 1931, or any time thereafter without giving you six months' advance information of such arrangement before supplying connecting plugs for any other make of mixer based on such provisions in our contract.

"In acknowledging this kindly advise when the writer can take up with your Mr. Jergeson the matter of detail construction of our connecting means for fitting your mixer, and also when you expect to make the first trade announcement, and when you hope to be able to make deliveries on the mixers so we can co-operate in connection with the supply of the connecting plugs."

And on August 20, 1930, the Arnold Electric Company replied as follows:

"This replies to your letter of August 19, 1930. We accept the offer made in your letter, and we are proceeding with the Arnold mixer, having provision for the Kar-Lac Cordless Hot Cup.

"We understand that you will make no arrangements of any kind before August 1, 1931 (or at any time thereafter without giving us six months' advance information) that will enable anyone other than the Arnold Electric Company to have the right to manufacture and sell mixers having

facilities for Cordless Hot Cups, under the patents to which our agreements with you of March 10, 1930, relate.

"Within ten days we expect to be ready to have Mr. Karlson come up and inspect the sample and give us the benefit of his advice and suggestions. Will let you know later the exact date for Mr. Karlson to come."

On January 27, 1931, the Arnold Electric Company notified the plaintiff that it would discontinue the manufacture and advertising of "Arnold No. 18 mixer," and offered to reconvey and reassign the letters patent which had been assigned to it. Shortly after August 20, 1930, the Arnold Electric Company opened negotiations with the Hamilton Beach Manufacturing Company, which negotiations resulted in a sale of the entire assets of the Arnold Electric Company to the Hamilton Beach Manufacturing Company. The complaint then alleges:

"The purpose of the Arnold Electric Company in representing to the plaintiff that it was intending to carry out the contract was to deceive the plaintiff, Kar-Lac Company, and to aid the Arnold Electric Company in selling out its business to the Hamilton Beach Manufacturing Company, including the manufacture of the drink mixer known as Model No. 18. The Hamilton Beach Manufacturing Company, then actively engaged in the manufacturing and selling of a drink mixer without a cordless hot cup attachment, was anxious to prevent the Kar-Lac Cordless Hot Cup from being placed on the market. The Hamilton Beach Manufacturing Company believed that if it could buy out the Arnold Electric Company it could remove any competition it might have from the Kar-Lac Company. . . .

"The defendants Arnold Electric Company and Hamilton Beach Manufacturing Company put into effect their conspiracy, fraud and deception on the plaintiff, Kar-Lac Company, some time in the latter part of December, 1930, or the early part of January, 1931, when the Arnold Electric Company sold its entire business to the Hamilton Beach Manufacturing Company for $600,000."

There were allegations of loss, and plaintiff asked judgment for $200,000.

We have only stated such facts as are necessary to disclose the nature of the controversy. The complaint is long, involved, and contains much evidentiary matter. We have searched the complaint and the attached exhibits in vain for any allegation which alleges any act of conspiracy on the part of the Arnold Electric Company, Hamilton Beach Manufacturing Company, or any other of the defendants. Not only that, but it is also alleged in the complaint that—

"The Arnold Electric Company knew that through and by means of the 'Kar-Lac Cordless Hot Cup' it would be possible for the defendant, Arnold Electric Company, to force the defendant, Hamilton Beach Manufacturing Company, to buy out its entire business, and that consequently it could use to advantage the right to sell the 'Kar-Lac Cordless Hot Cup' in connection with its Drink Mixer Model No. 18 for the purpose of selling out and disposing of its business to the defendant, Hamilton Beach Manufacturing Company."

This so positively negatives any concert of action between Arnold Electric Company and Hamilton Beach Manufacturing Company as to render further discussion on the conspiracy issue unnecessary.

It is also alleged in the complaint upon information and belief that—

"The defendant, Arnold Electric Company, even at that time [August 20, 1930] had no intention of ever completing the Drink Mixer Model No. 18, or placing the same on the market and never intended to create any market for the 'Kar-Lac Cordless Hot Cup' but their entire efforts at such time were for the purpose only of demonstrating to the Hamilton Beach Manufacturing Company, a defendant herein, that it would have an active competitor in the field for its drink mixer, as is hereinafter more fully set forth."

It is claimed on behalf of the plaintiff that the Arnold Electric Company at the time it entered into the contract had

no intention of performing it, and representations that it did intend to perform it were for the purpose of deceiving the plaintiff and inducing it to make large expenditures in preparation for the manufacture of the Kar-Lac cordless hot cup, then to breach the contract, and so put the plaintiff out of business. This contention is not supported by the facts set out in the complaint.

Paragraph (6) of the contract between the parties contains the following provisions:

"In the event that the licensor [Arnold Electric Company] named in this agreement, who is the assignee of the patent herein identified, shall for any reason discontinue the manufacture and advertising of the new mixer known as 'Arnold No. 18' without making, advertising, and supplying the demand for some substitute model of mixer answering the provisions of section (1) of this agreement, the licensee named in this agreement, who is the assignor named in the assignment of said letters patent, shall have the right to a reassignment of the letters patent herein identified for the nominal consideration of one dollar ($1). Reassignment of said patent by the licensor shall be accepted by the licensee as full settlement of any and all pecuniary claim which the licensee may have against the licensor by reason of licensor's discontinuance of the manufacture and advertising herein provided for."

There was nothing contained in the letters of August 19th and August 20th, already set out, which in any way operated to modify the provisions of paragraph (6) of the contract. On January 27, 1931, the Arnold Electric Company notified the plaintiff that it was discontinuing the manufacture and advertising of Arnold No. 18 mixer, and offered to deliver a reassignment of the letters patent so that the agreement of March 10, 1930, would be terminated according to its terms. We fail to find any allegation which sustains the conclusion set out in the complaint that the plaintiff was induced to en-

ter into any arrangement with the Arnold Electric Company by reason of any fraudulent promissory misrepresentations.

The plaintiff alleges that the Arnold Electric Company had "an ulterior purpose" in inducing it to enter into the contract in question. The plaintiff alleges that the existence of this ulterior purpose was not discovered by the plaintiff until after the contract was terminated, and it had spent large sums of money in preparation for producing the cup. The gravamen of the complaint in this respect is that after the Arnold Electric Company began negotiations with the Hamilton Beach Company, it represented that it was continuing its preparation to manufacture the mixer in which the Kar-Lac cup was to be used. There is no allegation in the complaint that the Arnold Electric Company did not in fact continue such preparations, but it is alleged that the preparations were a part of its plan to compel the Hamilton Beach Company to buy its business. From these facts the plaintiff deduces the conclusion that the preparation of the Arnold Electric Company and its representations in regard thereto were fraudulent as to the plaintiff, because they were in fact advantageous to the Arnold Electric Company in negotiations for the sale of its property. It is apparent that if no sale had been made, what was done by the Arnold Electric Company would not have been fraudulent, but would have been merely by way of performance of its contract. It is apparent that the plaintiff is endeavoring to spell out an action in tort against the Arnold Electric Company in order to recover damages to which it might have been entitled if the Arnold Electric Company had breached the contract. The plaintiff, however, agreed that the contract might be terminated and the manufacture of Arnold No. 18 mixer be discontinued for any reason or no reason, and that a reassignment of the rights acquired by the Arnold Electric Company under the licensing contract should be accepted in full settle-

ment of all claims which plaintiff might have against the Arnold Electric Company. We are at a loss to understand how, under these circumstances, the plaintiff can contend that preparation by the Arnold Electric Company to manufacture the mixer, which was what it was required to do by the contract, amounts to a fraud upon the plaintiff. It seems a contradiction in terms to say that one was defrauded by the termination of a contract when he has agreed that the contract may be terminated in a manner therein specifically prescribed. In any event, the representations made, if any such were made, do not amount to actionable fraud. *Beers v. Atlas Assurance Co.* (1934) 215 Wis. 165, 253 N. W. 584.

*By the Court.*—The order appealed from is affirmed.